53  629
66h 244

OSBORN *vs.* THE UNION FERRY COMPANY, of Brooklyn.

If a ferry company, at the very threshold of its gate, places a log, against which its passengers would be in danger of stumbling in the dark, it is bound to do every thing in its power to guard against the danger. If it omits to place a light near the obstruction, for the protection of passengers upon its boats, it is guilty of negligence.

The ordinary rule that a master is, in all cases, liable for the negligence of his servant, does not, unqualifiedly, apply to injuries caused by the negligence of a contractor, or his employees. Yet where the contractor has stipulated to use the necessary precautionary measures to protect the public against accidents, the owner or employer is relieved from responsibility.

The contract between the owner of property, and a contractor, for the making of certain improvements thereon, provided that "in case the owner shall be held or made liable for any injury arising out of neglect or willful default of the said party (the contractor) or any of their workmen, the owner may deduct any such amount as he may be obliged to pay on said account, from the contract price." *Held,* that this provision was inserted, not to shift the responsibility to third persons on the contractor, but to indemnify the owner for any damages which such persons might recover against him, on account of the negligence of the contractor.

The placing a piece of timber in the public street, and keeping it there, is the commission and continuance of a nuisance, being an obstruction of the full and free enjoyment of the easement.

The public being entitled to the use of the street or highway, whoever, without special authority, obstructs it, or renders its use hazardous, by doing any thing upon, above, or below, the surface, is guilty of a nuisance; and any one sustaining special damage from it, without any want of due care to avoid injury, has a remedy against the person continuing the nuisance.

The act is wrongful, and does not involve a question of mere negligence. Consequently, even if the contract between the owner of property and one undertaking to make improvements thereon, contains a provision that the latter shall use all precautionary measures to protect the public, such owner will nevertheless be liable for any damages sustained by an individual in consequence of the placing and continuance of a nuisance in the public street, at the procurement and with the concurrence of the owner of the property.

THIS action was brought to recover damages for an injury sustained by the plaintiff in consequence of alleged misconduct of the defendants.

The plaintiff, together with his wife, and other members of his family, on the 18th of February, 1863, about

seven o'clock in the evening, crossed from Brooklyn to New York on one of the defendants' ferry boats. After crossing, he passed out of the ferry-house in the regular way for passengers, to get to an omnibus at the foot of Fulton street, New York. The night being dark, and no lamp being in the street, or on the premises of the defendant, to afford light to ferry or other passengers in that part of the street, the plaintiff stumbled over a piece of timber used to support a prop that upheld a cornice of the new ferry-house, which was then being built for the defendants. The exact place of the accident, and of the piece of timber over which he fell, was outside of the defendants' gate and premises, and on the public highway or street; but still, almost adjoining the gate. The new ferry-house was being erected by the Architectural Iron Works Company, under a contract with the defendants, by which that company was to put up the work according to specifications, in such manner as not to interfere with the operation of the ferry, and were to put up all necessary guards, and to perform all other due and proper acts and things for the safe protection of persons and property.

The action was tried at the New York circuit, in June, 1866, before Justice GROVER and a jury. When the plaintiff rested, the defendant moved to dismiss the complaint, which motion was denied. The defendants then called and examined a witness, and thereupon moved to dismiss the complaint, which motion was granted, and the plaintiff excepted. The exceptions taken on the trial were ordered to be heard, in the first instance, at a general term.

*H. L. Clinton*, for the plaintiff. I. The evidence proved beyond all doubt that the plaintiff was entirely free from fault or negligence. He passed out of the ferry-house in the usual way to reach the stages. At the time of the

accident it was dark. There was no light, and it was impossible for the plaintiff to see the piece of timber over which he stumbled. The attempt on the part of the defendants to show there was a light, so that one would see the piece of timber, signally failed.

II. The evidence proved that the defendants were guilty of gross negligence, and that their negligence caused the accident. The defendants were grossly negligent in not providing lights, so that passengers at night, passing out of their ferry-house, could see the piece of timber supporting the prop which supported the cornice of the ferry-house. The testimony on this point proves gross and criminal negligence on the part of the defendants. Not to provide sufficient lights, by which persons could see their way out from the ferry-house to the street, was negligence on the part of the defendants. (*Johnson* v. *Hudson R. R. R. Co.*, 20 *N. Y. Rep.* 65.) In this case, (pp. 73, 74,) Denio, J., says: "Its determination (the question of defendants' negligence) depended on the view which should be taken of the tendency of driving a railroad train at considerable speed through a city street, not lighted, on a dark evening, and without any proper means of giving notice to persons who might be upon the track, and without any lamps on the cars to enable the driver to see what might be upon the rails before him. *That such running was hazardous, in a high degree, I cannot doubt.*"

III. The defendants, as common carriers, were bound to use the highest degree of human foresight and skill to provide for the safety of their passengers, while only ordinary prudence is required of the passenger. Smith, J., in *Willis* v. *Long Island R. R. Co.*, (34 *N. Y. Rep.* 679,) in delivering the opinion of the court, says: "It is the duty of a carrier to exercise the highest degree of human foresight and skill to provide for the safety of his passengers." Emott, J., in the same case, (32 *Barb.* 403,) says: "The carrier is bound to the exercise of all possible skill, foresight

and care. The passenger is bound to conduct himself with due and ordinary prudence, such as a careful man would use under the circumstances." Porter, J., in *Besiegel* v. *N. Y. Central R. R. Co.*, (31 *How. Pr. Rep.* 191,) says: "The plaintiff owed no duty to the defendants beyond the exercise of ordinary·care." The defendants, as common carriers, were· bound to safely land their passengers, so as to enable them to reach the·street without injury.

IV. The defendants cannot shift the liability for injuries sustained by the plaintiff upon the Architectural Iron Works, by reason of the fact that they, under a written contract with the defendants, were then erecting a new ferry-house. It was the duty of the defendants to keep the access to and from their ferry-house free and clear of all obstructions, and well lighted at night. At the time of the accident to the plaintiff, the defendants were in the use and occupation of the ferry-house, in the prosecution of their business as common carriers. Smith, managing director of the Union Ferry Company, testified that they used the ferry-house the same as usual at the time of the accident. The defendants were not only in the use and occupation of the ferry-house, but they appropriated ·to their almost exclusive use the sidewalk in front of it. The defendants put down flagging in front of the ferry-house, and repaired it for their own use, whenever it needed repairing. They put down posts for their own use in front of the ferry-house. Before making any progress towards shifting the liability for accidents from defendants to the Architectural Iron Works, it must appear: 1. That the former contracted with the latter to guard against accidents by using lights and guards; and, 2. That the defendants had no control over the premises, and were not in the use and occupation of them at the time of the accident. In no case has it been held that the owner can shift the liability upon the contractor, unless the contractor

Osborn *v.* Union Ferry Company.

has stipulated to use the necessary precautionary measures to protect the public against accidents. In the case at bar, the contract between the defendants and the Architectural Iron Works does not provide that the Architectural Iron Works shall, during the erection of the ferry-house, provide lights, barriers, or use any precautionary measures whatever to protect the public or the passengers of the defendants against accidents. The only provision in the contract, relating to the subject, is the following : "In case the owner shall be held or made liable for any injury arising out of the neglect or willful default of the said party of the second part [Architectural Iron Works] or any of their workmen, the owner may deduct any such amount as he may be obliged to pay on that account, from the contract price." In the *City of Buffalo* v. *Halloway,* (3 *Seld.* 493,) it was held that a contractor who had undertaken to construct, for a municipal corporation, a sewer in a public street, was not responsible to it for damages to which it had been subjected in consequence of his leaving the sewer, during its construction, exposed, by means whereof one passing along the street fell in and was injured, because the contract did not provide that he should, by lights, barriers, or other precautionary measures, protect the public against accidents. In *Tully* v. *The Mayor,* (1 *Kern.* 432,) it was held that the corporation of the city of New York, which had ordered a street to be graded, and contracted with a person to do the grading, was not liable for damages caused by the negligence of the workmen employed by the contractor in performing the work. In this case it appeared (*p.* 433) that the contractor, by the terms of the written contract, "was bound to erect a fence across the end of the work, and, during the night, to keep burning proper and sufficient lights on and near the work, and to take all other necessary precautions for the prevention of accidents or injuries to person or property." In *Storrs* v. *The City of Utica,* (17 *N. Y. Rep.* 104,) it was alleged that

the defendants caused a sewer to be excavated in Genesee street, " and carelessly left and permitted the excavation to remain open in the night time, without any guard, barrier or protection, to keep travelers from falling therein, and without any lamps or lights to enable passengers to discover the danger, by reason of which negligence the plaintiff drove a wagon into the sewer, and was injured." The defense was, that " the work was excavated by one Shipman, under a contract which contained no stipulation in respect to any precautions for the safety of travelers." The court held, that the defendants were liable for the injury to the plaintiff, and that they could not shift their liability upon Shipman. The court below charged, " That if, in the course of a public improvement, it became necessary for the city corporation to make an excavation in a street, so as to render it unfit or dangerous to be traveled upon, it became the duty of the city to take measures, either by lighting the street or otherwise, to warn travelers of the danger, and that this duty did not rest upon the contractor, unless he had specially agreed to perform it." This charge was held to be correct. Upon the doctrine of these cases, how can the contractors, the Architectural Iron Works, be held liable, they never having contracted to use any precautionary measures against accidents to travelers ? In *Congreve* v. *Smith* (18 *N. Y. Rep.* 79) the action was brought to recover damages for injury sustained by the plaintiff by the breaking of a flagstone, forming part of the sidewalk adjoining a building and lot of the defendants in the city of New York. The defendants contracted with B. and R. Barton to do the work. Under an employment with the latter, one Houghey furnished and set the stone. No license or authority from the city to thus use and occupy the sidewalk was proved. The defense contended that the liability for the injury rested upon the builders, and not on the owners. The judge charged the jury, that the defendants were responsible for

the Bartons, or any one employed by them, and that "the suit stands against the defendants the same as if it were brought against the Bartons or Houghey." The Court of Appeals held that this charge was correct, and that the defendants were responsible for the injury, and could not shift their liability upon the contractors. In the case at bar, it nowhere appears, nor was there any pretense that the Union Ferry Company had any permission from the city to incumber the sidewalk by the erection of their new ferry-house, or by putting pieces of timber underneath props to support the cornice of the building. STRONG, J., at pages 81, 82, in delivering the unanimous opinion of the court, says: "The area was under the surface of the public street, and was maintained for the benefit of the property of the defendants, and the stone was placed over it, under contractors with the defendants, for the completion of the defendants' building, in pursuance of the contract. No license from the city for the area was proved." (*See also id. p.* 83.) In *Creed* v. *Hartmann,* (29 *N. Y. Rep.* 591,) it was held that persons contracting with the owner of lots to build a block of houses thereon, who make a sub-contract with another to make all the necessary excavations by digging the ground, blasting the rock, &c., the latter stipulating to guard against accidents by proper precautions, and to make good all damages, are liable for an injury by an individual who falls into an excavation in the sidewalk through the negligence of the sub-contractor or his servants, in not having the same properly protected. Upon the doctrine of this case, and *Congreve* v. *Smith,* the defendants, the Union Ferry Company, would be liable, even if the Architectural Iron Works had contracted—which they did not—to use the precautionary measures necessary to guard against accidents.

V. The defendants caused the injury to the plaintiff by their neglect, in not having their ferry-house, and the access to and from it, sufficiently lighted. If the defend-

ants did not put the stick of timber under the prop which supported the cornice, and had no control over it, they had control so far as placing lights to guard against accidents was concerned. The piece of timber under the prop would have been harmless, but for the neglect of the defendants in regard to lights. The principle underlying all the cases in which liability for injuries sustained by travelers has been shifted from the owner to the contractor, is, that the owner is not in the occupation of the premises, has no control over them, and does not select the workmen—employees of the contractor—whose negligence causes the injury. There is no authority which holds that an owner, in the occupation of premises, is not responsible for injuries sustained by those whom he invites upon his premises for purposes of his own business, when, by the exercise of ordinary prudence, he could have avoided such injuries by placing lights, so as to point out the danger. Certainly, a common carrier, who is held to the highest degree of vigilance and care, cannot escape liability for injuries occurring under such circumstances.

VI. The defendants, in permitting the piece of timber over which the plaintiff fell, to remain where it was used to support the cornice of the ferry-house without having proper and sufficient lights to guard passengers against the danger, were guilty of a nuisance in obstructing the highway, and on that ground are clearly liable to the plaintiff for the damages sustained by him. In *Dygert* v. *Schenck,* (23 *Wend.* 446,) it was held that where the owner of land over which a public highway passes, digs a raceway across the road to conduct water to his mill, and builds a bridge over the raceway, and an injury is sustained by any one in consequence of the bridge being out of repair, such owner is liable in damages to the party aggrieved. It was also held, in that case, that the person who thus interfered with the highway was liable if an injury occurred, though he used the utmost care to pre-

Osborn *v.* Union Ferry Company.

vent it, unless the party injured was guilty of *gross negligence.* In *Congreve* v. *Smith,* (18 *N. Y. Rep.* 82,) Strong J., says : "The general doctrine is, that the public are entitled to the street or highway in the condition in which they placed it, and whoever, without special authority, materially obstructs it or renders its use hazardous by doing any thing upon, above or below the surface, is guilty of a nuisance; and, as in all other cases of public nuisance, individuals sustaining special damage from it, without any want of due care to avoid injury, have a remedy by action against the author or person continuing the nuisance. No question of negligence can arise, the act being wrongful." *Harlow* v. *Humiston* (6 *Cowen,* 189) was an action for a nuisance in wrongfully placing logs and tree tops in the highway, by means of which the plaintiff's horse, being frightened, ran upon a tree top and was killed. The court held that the defendant was liable for damages which resulted from this obstruction of the public highway. Savage, Ch. J., (*p.* 192,) in delivering the opinion of the court, says : "It is no doubt a nuisance to dig a ditch or lay logs in the highway ; and whoever sustains an injury from such a cause, without any fault of his own, may maintain an action against the author of it."

VII. Even if the Architectural Iron Works were liable to the plaintiff for the injuries sustained by him, the defendants would be equally liable; and, in that event, the plaintiff can maintain his action against both, jointly, or against either, separately. (*Congreve* v. *Smith,* 18 *N. Y. Rep.* 79. *Creed* v. *Hartmann,* 29 *id.* 591. *Davenport* v. *Ruckman,* 37 *id.* 568. *Anderson* v. *Dickie,* 1 *Rob.* 238.)

*B. D. Silliman,* for the defendant. I. The plaintiff's exceptions to the rulings of the court admitting evidence are immaterial. The evidence so admitted did not affect the court on the motion to dismiss the complaint. It could, in any view, be objectionable only as regards the

jury. As the case did not go to the jury, the rulings so excepted to were wholly unimportant. The rulings were correct. It was part of the plaintiff's case that it was carelessness, by reason of want of light, to place the prop where it was. The testimony tended to show that the interior of the ferry-house was lighted; that there were windows through which such lights shone; and that, at the time, the defendants conducted their business just as they did before the erection of the new building was begun. It was proper, therefore, to show what were such previous use and conduct of the premises and business, and that it included the lights testified to by the witness. The question allowed, as to any other accident having occurred from the prop, was admissible in meeting the testimony of the plaintiff's witness Butler, that a person had fallen over it at mid-day. It was further admissible, as showing that it could not have been an improper obstruction, when 25,000 to 30,000 persons passed it *per diem,* and no accident had resulted, although it had been there some seven to fourteen days; and it would be for the jury to say whether the plaintiff's accident, under such circumstances, must not have resulted from his own carelessness.

II. The plaintiff's case against the defendants as common carriers, entirely fails by his own evidence that his passage was ended, and he had left their premises. He says: "After leaving the boat, I passed up the bridge, and then out at the gate nearest the ticket office. * * I turned to the left to go to the stage." He shows that the *locus in quo* of his accident was outside of the defendants' premises and on the public street. He says: "The whole of it was an open street up to the ferry-house." His witnesses testify to the same thing.

III. Nor can he recover on the ground that the defendants had erected an obstruction from which the injury resulted. This is expressly disproved.

IV. The whole work being done by the "Architectural

Iron Works," under the contract in evidence, the defendants were not liable for the negligence or carelessness of the contractors. The plaintiff's recovery, if he is entitled to recover at all, must be against the contractors, and not against the defendants. (*Blake* v. *Ferris*, 1 *Seld.* 48. *Pack* v. *The Mayor &c.*, 4 *id.* 222. *Kelly* v. *The Mayor &c.*, 1 *Kern.* 432. *Norton* v. *Wiswall*, 26 *Barb.* 618. *Benedict* v. *Martin*, 36 *id.* 288. *Overton* v. *Freeman*, 8 *Eng. L. and Eq.* 479.) In *Knight* v. *Fox & Henderson*, (1 *Eng. L. and Eq.* 477,) a railway company had entered into a contract with A. to construct a branch line; A. contracted with B. to erect a bridge, part of the work. B. had a surveyor, C., whom he paid by a salary of £250 per annum, to attend to his general business; and after obtaining the contract for the bridge, contracted with C. to provide the necessary scaffolding, for which he was to receive £40, irrespective of his salary; B. to furnish the requisite materials, including lights. One of the poles of the scaffold rested on a sleeper fixed to the pavement of the highway, and owing to the want of sufficient light to warn the passers by, the plaintiff stumbled over it and broke her leg; subsequent to which additional lights were placed on the spot, and B. paid for them. *Held*, that B. was not liable, and that the plaintiff's remedy lay against C.

*By the Court*, CLERKE, P. J. I. Unless the defendant was relieved from responsibility by the contract with the Architectural Iron Works Company, assuming for the present that the question of negligence is involved in this case, I am inclined to the opinion that it was guilty of negligence in not having light in some place on its premises, near enough to protect passengers coming out of the gate. A light could have been placed, without difficulty, on some part of the premises, to enable passengers to avoid any obstruction placed by them so near the exit for passengers, that without such a light ordinary care would

scarcely enable them to do so. · If a ferry company at the very threshold of its gate places a log, against which its passengers would be in danger of stumbling in the dark, I think it is bound to do everything in its power to guard against the danger; and the omission to do so is negligence. Passengers, without being previously informed of it, are not apt to suspect such danger, and passing out in the crowd, have their attention diverted from the apprehension of it. It was proven in the case before us that the piece of timber over which the plaintiff fell could not be seen unless a person was expressly looking to see it. It was a dark, misty night, and there was no light around the ferry-house. A light, as I have already said, could have been placed somewhere on the defendants' premises, contiguous to the place where the timber was placed; and the omission to do so was such negligence as would make it liable for damages, to the plaintiff, unless it is relieved from liability by the fact that it was placed there by the Architectural Iron Works Company in the course of performing a contract by which they undertook to erect a new ferry-house for the defendant.

II. The recent reports abound with decisions defining and fixing the liability of persons on whose premises accidents occur, while work was being performed there under a contract between them and another person. Undoubtedly, the absolute liability of owners has been greatly modified. The ordinary rule, that the master is, in all cases, liable for the negligence of his servant, does not, unqualifiedly, apply to injuries caused by the negligence of a contractor or his employees. But I think the sum of all the recent decisions is, that where the contractor has stipulated to use the necessary precautionary measures to protect the public against accidents, the owner or employer is relieved from responsibility. (*See City of*

*Buffalo* v. *Holloway,* 3 *Seld.* 493; *Storrs* v. *City of Utica,* 17 *N. Y. Rep.* 104.)

In this case, the contract between the defendant and the Architectural Iron Works Company does not provide for the use of any such precautionary measures. To be sure, the contract provides that " in case the owner shall be held or made liable for any injury arising out of neglect or willful default of the said party, (the Architectural Iron Works Company,) or any of their workmen, the owner may deduct any such amount as he may be obliged to pay on said account from the contract price." This provision was obviously inserted, not to shift the responsibility to third persons on the contractor, but to indemnify the owner for any damages which such persons may recover against him, on account of the negligence of the contractor.

III. But the question involved in this case is something more than a question of negligence. The piece of timber, over which the plaintiff fell, was placed and continued in the public street at the procurement and with the concurrence of the defendant. The placing of it there, and keeping it there, was the commission and continuance of a nuisance. It was an obstruction of the full and free enjoyment of the easement. The public being entitled to the use of the street or highway, whoever, without special authority, obstructs it, or renders its use hazardous, by doing any thing upon, above or below the surface, is guilty of a nuisance; and any one sustaining special damage from it, without any want of due care to avoid injury, has a remedy against the person continuing the nuisance. The act is wrongful, and does not involve a question of mere negligence; and consequently, in the case before us, even if the contract between the defendant and the Architectural Iron Works Company contained a provision that the latter should use all precautionary measures to protect the public, nevertheless, the defendant would be liable

for the damages sustained by the plaintiff. (*See Congreve* v. *Smith,* 18 *N. Y. Rep.* 79; *Creed* v. *Hartmann,* 29 *id.* 591.)

The judgment should be reversed, and a new trial ordered; costs to abide the event.

GEO. G. BARNARD, J., concurred.

SUTHERLAND, J. It was the duty of the defendants to furnish or keep lights, so that their passengers going to and from the boat might, with ordinary attention, have seen the stick of timber. I concur in saying that there should be a new trial, with costs to abide the event.

[NEW YORK GENERAL TERM, January 4, 1869. *Clerke, Sutherland* and *Geo. G. Barnard,* Justices.]