George A. Vogel, Appellant, v. The Mayor, Aldermen and Commonalty of the City of New York, Respondent.

One who employs a contractor to do a work, not in its nature a nuisance, but which becomes so by reason of the manner in which the contractor

has performed it, if he accepts the work in that condition, becomes at once responsible for the nuisance.

In May, 1857, one K. entered into a contract with defendant to regulate, grade, etc., a portion of one of its streets, the work to be completed on or before August 19, 1858. The contract required the work to be done under the supervision of a person appointed by the street commissioner, and to be approved of by that officer or the person so appointed, and if at any time the work should not progress according to the terms of the contract, said officer was authorized to complete the work at the expense of the contractor. K. commenced the work and dug a deep hole or trench in the street near plaintiff's lots, adjoining the street; in 1859 he dug another hole, but did little else toward the performance of the contract, and in 1859 abandoned it. In 1873 the city employed another person who completed the work. In consequence of said excavations, surface water, which before that had been accustomed to flow in a natural channel, was diverted and thrown upon plaintiff's premises, causing damage. This damage was done after the time for the performance of the contract had expired, and ceased when the work was completed. In an action to recover said damage, *held* (MILLER, DANFORTH and FINCH, JJ., dissenting), that defendant was liable, as it permitted these excavations to remain when it had the power and right to take charge of and complete the work, and thus protect plaintiff's property from injury.

*Blake* v. *Ferris* (5 N. Y. 48), *Pack* v. *The Mayor* (8 id. 222), *Kelly* v. *The Mayor* (11 id. 432), distinguished.

(Argued March 7, 1883; decided March 20, 1883.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 20, 1881, which affirmed a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial, and affirmed an order denying a motion for a new trial.

The nature of the action and the material facts are stated in the opinion.

*Samuel Hand* for appellant. The title to a street, when acquired by the city, is vested in it in fee. (Val. Laws, 1198.) The power of the city to regulate and grade streets exists only in regard to streets of or belonging to it. (Val. Laws, 1190, 1191.) The power to regulate and grade streets is conferred by statute upon the mayor, etc., of the city of New York, and its exercise in fact is the performance of a public ministerial

duty. (*Barton* v. *City of Syracuse*, 36 N. Y. 54.) A municipal corporation in performing a public duty, ministerial in its nature and within its powers, is liable for any injury occasioned by the negligence of its agents, whether the latter hold the relation of immediate employes or apparently independent contractors, unless it arises from a collateral act or omission of an employe, and not his unskillfulness in doing the very act which was authorized. (*Water Co.* v. *Ware*, 16 Wall. 566; *Mersey Dock* v. *Gibbs*, L. R., 1 Eng. & Ir. App. 93, 114, 115; *Ellis* v. *Gas Co.*, 2 E. & B. 167; *Butler* v. *Hunter*, 7 H. & N. 826; *Storrs* v. *Utica*, 17 N. Y. 104; Dillon on Mun. Corp., § 753; *Hines* v. *City of Lockport*, 50 N. Y. 236; *Britton* v. *The Mayor, etc.*, 21 How. Pr. 251; *King* v. *N. Y. C. & H. R. R. R. Co.*, 66 N. Y. 185, 186.) Under the circumstances, the defendant is liable, whether the contractor was its servant or independent of it, particularly as the injury was directly caused by diverting the natural water-course. (*Byrnes* v. *Cohoes*, 67 N. Y. 204; *Storrs* v. *City of Utica*, 17 id. 108; *Lynch* v. *Mayor*, 76 id. 62; *Bastable* v. *Syracuse*, 8 Hun, 587.) A municipal corporation, in using its real estate, is liable in the same manner and to the same extent as an individual owner for injury done adjoining or other lands. (*Bailey* v. *Mayor*, 3 Hill, 541; *Rochester White L. Co.* v. *City of Rochester*, 3 N. Y. 463.) Defendant having continued the nuisance upon Fortieth street, which resulted in the injury to the plaintiff, is liable therefor. (*Vedder* v. *Vedder*, 1 Denio, 257; *Fish* v. *Dodge*, 4 id. 317; *Brown* v. *C. & S. R. R. Co.*, 12 N. Y. 492; 2 Greenl. on Ev., § 472; *Todd* v. *City of Troy*, 61 N. Y. 506; 2 Greenl. on Ev., § 472.)

*D. J. Dean* for respondent. The defendant is not liable for damages occasioned by the unskillfulness or neglect of the contractor or his servants, or consequent upon a want of care in the method of prosecuting the work. (*Blake* v. *Ferris*, 5 N. Y. 48; *Pack* v. *The Mayor*, 8 id. 222; *Kelly* v. *The Mayor*, 11 id. 432; 4 E. D. Smith, 291.) It is only when the work which has been directed to be done is intrinsically dangerous,

however skillfully performed, and the plaintiff, without neglect on his part, has suffered injury, that the city becomes liable, if proper and reasonable care has not been used to prevent the accident, and cannot escape the liability by pleading the contractor's neglect. (*Storrs* v. *Utica*, 17 N. Y. 104; *McCafferty* v. *P. M. & S. D. R. R. Co.*, 61 id. 181; *King* v. *Livermore*, 9 Hun, 299; *Gardner* v. *Bennett*, 38 N. Y. Sup. Ct. 198; *Cuff* v. *N. R. R. Co.*, 35 N. Y. 17; 10 Am. Rep. 205; Dillon on Municipal Corporations, §§ 1028–1031 [3d ed.]; *City of Erie* v. *Caulkins*, 85 Penn. St. 247; 27 Am. Rep. 642.) The damage suffered by the plaintiff was the consequence of the method of prosecuting the work adopted by the contractor, who was in this respect beyond the control of the defendant. (*Kelly* v. *Mayor*, 11 N. Y. 432; *Reedie* v. *N. W. R'y*, 4 Exch. 244; Wood on Master and Servant, 619; *Water Co.* v. *Ware*, 16 Wall. 566.) The city had the right to contract for the grading of the street, and to cause the surface of the land to be changed at its pleasure, and without regard to the permanent or temporary effect of such changes upon the flow of surface water. (Dillon on Municipal Corporations, § 1041 [3d ed.]; *Turner* v. *Dartmouth*, 13 Allen, 291; *Greely* v. *R. R. Co.*, 53 Me. 200; *Dickenson* v. *Wooster*, 7 Allen, 19; *Flagg* v. *Wooster*, 13 Gray, 601; *Franklin* v. *Fisk*, 13 Allen, 211; *Barry* v. *Lowell*, 8 id. 127; *Parks* v. *Newburyport*, 10 Gray, 28; *Lynch* v. *The Mayor*, 76 N. Y. 60; *Gould* v. *Booth*, 66 id. 62; *Wilson* v. *The Mayor*, 1 Denio, 595; *Mills* v. *Brooklyn*, 32 N. Y. 489; *Town of Union* v. *Durkes*, 38 N. J. L. 21; *Imler* v. *City of Springfield*, 55 Mo. 119; 17 Am. Rep. 645.) When the contractor failed to complete his contract, and became in default to the corporation, leaving the street in the condition described, it was a matter for the discretion of the defendant to determine when and how the work on the street should be continued. (*Wilson* v. *The Mayor*, 1 Denio, 595; *Mills* v. *Brooklyn*, 32 N. Y. 489; *Rivers* v. *The City Council of Augusta*, 23 Alb. L. J. 17; *Cuff* v. *Newark & N. Y. R. R. Co.*, 35 N. J. 17; 10 Am. Rep. 205; Anson on Contracts, 200.) If the injuries to plaintiff's property

were caused by the act or neglect of the contractor, by the method adopted by him in prosecuting the work, he alone is liable, but if they were necessarily incidental to the work, either as a permanent or temporary consequence thereof, defendant is not liable. (*Radcliff* v. *The Mayor*, 4 N. Y. 195; *Hoyt* v. *Hudson*, 9 Am. Rep. 473; Dillon on Municipal Corporations [3d ed.], §§ 989, 991.) It was the duty of the plaintiff in a case of this kind to use all possible means to reduce the amount of his damage as much as possible. (Sedgwick on Measure of Damages, 164 [7th ed.]; *Lawson* v. *Price*, 2 Law & Eq. 427; *Loker* v. *Damon*, 17 Pick. 284.)

EARL, J.    This action was brought to recover damages, for injuries to two houses belonging to the plaintiff, and for consequent loss and diminution of rents, by reason of water turned and caused to flow, from time to time, between August, 1858, and December, 1874, into and upon the premises of the plaintiff, situated on the south-east corner of Second avenue and Fortieth street, in the city of New York. The plaintiff was non-suited upon the trial, and from the judgment entered against him upon the nonsuit, he appealed to the General Term, and from affirmance there, to this court.

In reviewing this nonsuit we must take the facts as the evidence most favorable to the plaintiff tended to establish them, and they are as follows :

The plaintiff, from 1852 to the commencement of this action, owned two lots on the south-east corner of Fortieth street and Second avenue. The land between Thirty-ninth and Forty-second streets and First and Second avenues, was a hill, highest at Forty-second street and First avenue, and lowest at Thirty-ninth street, and it sloped down southerly and westerly from Forty-second street toward Thirty-ninth street. A water-course crossed Fortieth street about one hundred and seventy-five feet east of Second avenue, and seventy-five feet east of the rear line of plaintiff's lots, and the surface water coming down from about twenty acres of the elevated land ran through this water-course, a natual depression in the land, toward Thirty-ninth

street, and then down that street to the East river, doing the plaintiff's lots, prior to 1858, no damage.

Prior to May, 1857, Fortieth street between Second and First avenues had not been regulated and graded, although the title to the land in the street belonged to the city; but the city had established the grade of the street so that when the street should be completed it would have a descent toward the First avenue and the East river. On the 19th day of May, 1857, the city made a contract with one Kinsley to furnish all the materials and labor to regulate, grade, curb and gutter Fortieth street between the two avenues named, and he was to complete his contract on or before August 19, 1858. The plaintiff, learning that the grade of the street had been established and that the contract with Kinsley had been made, entered into a contract with a builder to erect two buildings upon his lots, in reference to the grade so established and the contract with Kinsley so made by the city. The buildings were commenced in the latter part of the summer of 1858, and were completed about May 1, 1859.

The contract with Kinsley provided that the work should be " under the supervision of the surveyor, or such person as may be appointed by the street commissioner ; " that if at any time the work should not progress according to the terms of the contract, and the street commissioner should be of opinion that the work was delayed, " he shall have the power to place such and so many other persons, by contract or otherwise, to work at and complete the same, as he shall deem advisable," and charge the expense of completing the work to the contractor, and deduct the amount thereof from the compensation to be paid to him under the contract; that the work should conform " to such further directions as shall be given by the street commissioner ; " " that a sufficient number of persons shall be at all times employed to execute the work, the whole to be approved of by the street commissioner or such person as shall be appointed to superintend the work ; " that " the contractor would commence the work within      days from signing the

contract, and progress therein so as to complete the same on or before the 19th day of August, 1858."

The contractor commenced to work under his contract in 1858. If he had commenced his work on the First avenue and worked toward the Second avenue, the topography of the district was such that he could have completed the contract without damaging the plaintiff. But he commenced at the Second avenue, and dug a deep hole or trench in the street, near the plaintiff's lots, and in the year 1859 he dug another hole in the street, making, however, but little progress with the work upon his contract. After 1859, all he did was in each year to draw a little sand from the street, and occasionally some rock, as it is to be inferred, for his own use elsewhere. In that year he practically abandoned the work, and never again resumed it. In 1873, a new man, employed, as it may be inferred, in some way by the city, took hold of the work and completed the contract. During all these years, from 1858 to the completion of the work by the new man in 1873, in consequence of the excavations made in the street, the water which had been accustomed to flow in the natural channel above described, in the times of rain, was diverted and thrown in great volumes upon plaintiff's lots, doing him great damage. The plaintiff endeavored to protect his lots against the floods, but was unable to do so. After the completion of the work, he suffered no further damage.

Upon these facts, if the city had directly through its agents caused the excavations upon its own land in the street, and thus diverted the great volume of water upon plaintiff's lots, there would have been little or no room for contention that it would not have been liable for the damage done. Its liability in such case could be based upon principles laid down and decided in *Byrnes* v. *City of Cohoes* (67 N. Y. 204), and *Noonan* v. *City of Albany* (79 id. 470), and other like cases.

But it is claimed on behalf of the city that it is not liable for these damages, because of the contract it had entered into with Kinsley, by whom the excavations in the street were made. The claim is that the damages were caused by the im-

proper and negligent manner in which he performed his contract; that he was an independent contractor, and that the city had no control over the manner in which he should perform his work, and hence was not responsible for his wrongs or carelessness, he alone being responsible upon principles laid down in *Blake* v. *Ferris* (5 N. Y. 48), *Pack* v. *The Mayor* (8 id. 222), *Kelly* v. *The Mayor* (11 id. 432); and other similar cases. But those cases are not in point. In *Blake* v. *Ferris* the defendants, having a license at their own expense to construct a sewer in one of the streets of the city of New York, entered into contract with another person to construct it at a stipulated price for the whole work, and the plaintiff was injured in consequence of the negligent manner in which the unfinished sewer was left open and unguarded in the night-time. In an action against the defendants to recover damages for the injuries thus sustained, it was held that they were not liable, for the reason that the contractor was not their agent, and that they were not responsible for his negligence. That case was criticised and questioned by Comstock, J., in the case of *Storrs* v. *The City of Utica* (17 N. Y. 104), where he said in substance that the doctrine of *respondeat superior* was correctly expounded in that case, but improperly applied. But to make that case analogous to this, suppose the contractor, after digging the trench in the street, had abandoned his work and left the trench there for weeks and years, could the defendants have escaped liability? Could they permit an excavation which they had caused to be made in the street, to remain there an indefinite time after the work had practically ceased, and claim exemption from liability because they had committed the work to a contractor? Here, if this damage had been done to the plaintiff while Kinsley was in the active and proper performance of his contract, there would be some ground for claiming that the city should not be made liable for the damage resulting from the improper manner in which he performed his work. Suppose A. enters into contract with B. to do some work upon his land, his private property, and in doing this work B. does it so carelessly as to turn a stream of

water upon the land of C. and then B. abandons his contract and for years omits to proceed with it; could A. permit the water to run upon the land of C. for years and escape liability for the damage which should thus be caused? Clearly he would be held responsible for what he had caused to be done, or suffered to be done, upon his own land, to the injury of his neighbor, and he could not shield himself behind the claim that B. was an independent contractor when he did the act which first diverted the water.

In *Pack* v. *The Mayor*, the city had made a contract with a person to grade a street, and the damage complained of was done by the carelessness of a sub-contractor in blasting rock. It was held that the person actually guilty of the careless act was liable for the damage, and that the city was not liable, as it had no control over the workmen of the contractor — could not dismiss them or direct the manner in which the blasting should be done. In reference to a clause in the contract in that case, which bound the contractor to conform the work to such further directions as might be given by the city or its officers, the court held, as stated in the head-note, " It gives to the corporation power to direct as to the *results* of the work; but without control over the contractor or his workmen, as to the *manner* of performing it; which control alone furnishes a ground for holding the master or principal liable for the act of the servant or agent." But the plain inference is that the city in such a case is liable for the consequences of operations which are subject to its control.

The case of *Kelly* v. *The Mayor* was similar to the case of *Pack* v. *The Mayor*, and was disposed of upon precisely the same principles. The doctrine was again announced that to make the city liable it must have the power to direct and control the manner of performing the very work in which the carelessness occurred.

In the case now under consideration the damage was occasioned to the plaintiff after the time for the performance of the contract by Kinsley had expired, at a time when he could not, as against the city, claim the possession of the street

or the right to do any work therein.   The damage was done because the work was improperly delayed and practically abandoned for about fourteen years, during all of which time the city had the right, by the very terms of the contract, to assume control of the work and finish it at the expense of the contractor.   The city is liable because it permitted its contractor, in the execution of a contract with it, to make these excavations in the street and to thus turn the water upon plaintiff's lots when it had the power and right, at any time within the fourteen years, to take charge of the work, complete the contract and thus protect the plaintiff's property against injury.

The city owed plaintiff a duty, and the breach of that duty imposes the liability.   The city is in the same position as it would have been if it had contracted for making the very excavations, and then had left them to do the injury complained of.   This bears some analogy to the case of a continuing nuisance.   One must not suffer a nuisance to continue on his premises to the injury of others, although he was not responsible for its creation.   (*Osborn* v. *The Union Ferry Company*, 53 Barb. 629; *Burgess* v. *Gray*, 1 C. B. 578.)   If one employs a contractor to do a work not in its nature a nuisance, but when completed it is so by reason of the manner in which the contractor has done it, and he accepts the work in that condition, he becomes at once responsible for the creation of the nuisance, upon a principle very similar to that which makes a principal responsible for unauthorized wrongs committed by his agent by ratifying them.   (*Boswell* v. *Laird*, 8 Cal. 49.)

This is not like the case supposed of a convulsion of nature causing these chasms and thus turning the water, and the responsibility of the city is not such as it would have been in that case.   Here the excavations were made by agencies put in motion by the city, in the execution of a contract for it, upon its land.   The excavations were not necessarily damaging to the plaintiff.   If the work had been carried to completion in a reasonable time, no serious damage would have been done,

as the plaintiff's houses were not finished until 1859, nearly a year after Kinsley's contract was to have been completed. But the damage came because the excavations were needlessly, negligently and heedlessly suffered to remain in the street for an unreasonable length of time, and for that responsibility attached to the city.

We are, therefore, of opinion that upon the facts which the evidence tended to establish, there is no rule of law which shields the city from liability to the plaintiff for his damages, and that the nonsuit was improperly granted.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur, except MILLER, DANFORTH and FINCH, JJ., dissenting.

Judgment reversed.