# Watts *v.* Atlanta B. & A. R. R. Co., *et al.*

*Damages for Improper Construction of Culvert.*

(Decided December 17, 1912.　60 South. 861.)

1. *Appeal and Error; Review; Presumption.*—Where none of the demurrers to the plea are set out in the record and it appears that the court sustained some and overruled others it will be presumed on appeal that such as were sustained pointed out the defects in the plea and such as were overruled were properly overruled.

2. *Waters and Water-Courses; Culvert; Improper Construction; Damages.*—Where the action was for damages for the overflow of lands because of the improper construction of the culvert and the

plaintiff's evidence tended to show that the culvert was too small to carry off the water with the result that it was backed upon his land, the question of the proper construction of the culvert was for the jury notwithstanding evidence of experts and non-experts to the contrary.

3. *Same; Directing Verdict.*—Where it appeared that one of the defendants had nothing to do with the construction of the culvert alleged to have produced the damages it was proper to direct a verdict for such defendant.

4. *Master and Servant; Independent Contractor; Acceptance and Use by Owner.*—Where the railroad owned the right of way over plaintiff's land and used it for railroad purposes, and accepted a culvert from an independent contractor which was so improperly constructed as to back water on plaintiff's land and continued its use after notice of its defect it could not avoid liability on the ground that the culvert had been constructed by an independent contractor.

APPEAL from Clay County Court.

Heard before Hon. E. J. GARRETT.

Action by J. H. Watts against the Atlanta, Birmingham & Atlantic Railroad Company and others for damages for the improper construction of a culvert. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

The original count does not appear in the record. Count 1, as it appears in the record, is as follows: He amends count 1 as follows: "The plaintiff claims of the defendants the sum of $500 damages for that, to wit, plaintiff is, and has been for several years, the owner and in possession of the following described real estate, to wit, W. ½ of N. W. ¼ of section 23, township 19, range 7, Clay county, Alabama., containing 80 acres, and that about the year 1905 a railroad was constructed along and through said lands, and that during the year 1908, while said railroad was owned by the Atlanta, Birmingham & Atlantic Railroad Company, one of the defendants, and in their possession, and operated by it, the said defendants were engaged in improving and repairing said railroad, and building culverts under same at the place where said railroad passed

through the lands of plaintiff, and that said culvert was so constructed that it raised the bed of said branch, which flowed under said culvert, and caused the water to gather and stand on the lands of plaintiff, backing far enough on plaintiff's land, which are level bottoms, to overflow said bottoms, and remain thereon, and rendered said land useless for the purpose of farming, for which it was being used, and for which it had been used for several years prior thereto, and that said culvert was so constructed that it is impossible for plaintiff to ditch and drain said land; and plaintiff further avers that said culvert was constructed in the manner it was, without the permission or consent of the plaintiff, and that it made said land worthless for said farming purposes, to plaintiff's damage aforesaid."

RIDDLE, ELLIS, RIDDLE & PRUITT, for appellant. No brief reached the Reporter.

TILLMAN, BRADLEY & MORROW, for appellee. No brief came to the Reporter.

DE GRAFFENRIED, J.—The record in this case, through no fault of the counsel on either side, is in such an unsatisfactory condition that we find much difficulty in attempting to pass upon even a few of the many questions which were presented to the trial court, and which this court is asked to review. The original complaint is not in the record.

There were many pleas to which demurrers were interposed. To some of the pleas, demurrers were sustained; but none of the demurrers to any of the pleas are set out in the record, and for that reason we do not know, and cannot say, whether the demurrers were well taken or not. Of course, in this condition of the record,

[Watts v. Atlanta, B. & A. R. R. Co., et al.]

we presume that the demurrers pointed out the defects in the pleas. The same situation prevails with reference to the pleas to which demurrers were overruled. In the absence of the demurrers, we presume that the trial court properly overruled them.

1. The case seems to have been tried upon certain counts, which were added by amendment to the original complaint and upon certain pleas, which were filed to those counts. For the purposes of this opinion, we confine our attention. to count 1 of the complaint, as amended (which the reported will set out), and to the issues as made by the pleas filed to said count.

2. The pleas upon which the case appears to have been tried are numbered in the record as pleas 1, 2, 5, 7, 10, 18, and amended plea 6. The appellee contends that amended plea 5½ was also one of the pleas upon which the case was tried and the appellant's counsel also argues the case upon that hypothesis. The record, we think, affirmatively shows that a demurrer was sustained to amended plea 5½, and that therefore no issue was presented to the jury under said plea. The only plea in the record which is numbered 5½ is a plea which is spoken of in the record in some places as "amended plea 5½," and in other places simply as "plea 5½." We copy the following from the minutes of the court: "The defendant then filed amended pleas, by leave of the court, 3, 5½, 6, and 8, and new plea 19, and plaintiff refiles demurrers to amended pleas 5½ and 6; and, the demurrers being duly considered by the court, it is considered that the demurrers be and are overruled as to 5½ and 6, and sustained as to others. The plaintiff then filed his *demurrers* to pleas 5½ and 6, and the defendant objects; and the defendant's objections, being considered and understood by the court, are overruled, and the *pleas* are filed and being considered by

the court that the *pleas* be *sustained* as to 5½ and over-ruled as to 6." The above italicised words are ours. The word "pleas," italicised by us, evidently means "demurrers." So treating the word "pleas" in the two places where we have used italics, there is some meaning to the above minute entry, and otherwise there is not. We take it that the quoted portion of the minute entry means that the plaintiff filed certain grounds of demurrer to certain pleas, among them 5½ and 6, and that the court overruled the demurrer to pleas 5½ and 6, and sustained the demurrer to the other pleas; and that, after this was done, the plaintiff was permitted, against the objection of defendant, to file other grounds of demurrer to pleas 5½ and 6, and that this last demurrer was sustained as to plea 5½ and overruled as to plea 6.

3. Pleas 1 and 2 were pleas of the general issue. All the other pleas allege, in substance, that the culvert was so properly and prudently constructed as to protect the plaintiff's property, and was of a sufficient size to carry off the volume of water of the branch through plaintiff's property under any ordinary conditions of rainfall.

4. The contention between the parties to this suit is as follows; The plaintiff owns a farm through which there runs a branch. The defendant railroad company owns and operates a railroad which runs across the plaintiff's farm. At the point where the railroad crosses the branch on the plaintiff's land, there was a trestle. The railroad company concluded to place a culvert where the trestle was, and to construct a fill or embarkment on each side of the culvert across the bottom, through which the branch ran. This was done, and the plaintiff contends that the opening made by the culvert was too small to carry off the waters of the

branch, with the result that the waters were backed
out into his field, and a marsh, or morass created where,
before that time, there was a cultivated field. The
plaintiff had evidence tending to show that this was
true; and the defendant had evidence tending to show
that it was not true. If the plaintiff's evidence on the
subject gives the true situation, it is, of course, evident
that there was evidence tending to show that the cul-
vert was not properly constructed in that it failed to
meet the purpose for which it was designed. If a cob-
bler takes the measure of a man's feet under a contract
to make him a pair of shoes, and then makes the shoes
and the shoes do not fit the man's feet, there is evi-
dence that the shoes, in some way, were not properly
made. The shoes may appear to be all right; and, al-
though expert cobblers may testify that the shoes were
properly and skillfully made, nevertheless, if the shoes
do not, in fact, fit the man's feet, there is evidence tend-
ing to contradict the expert testimony. In this case
there was evidence of experts tending to show that the
culvert was, in all things, properly constructed, and
that it was amply sufficient to meet the demands of the
branch under ordinary conditions of rainfall—i. e., that
the branch was sufficient, after the culvert was put in,
to meet the same demands which had previously been
made upon it by waters flowing through the plaintiff's
lands. There was evidence, also of nonexperts, that the
plaintiff's lands were, in so far as their drainage was
concerned, in the same condition that they were in be-
fore the culvert was erected. On the other hand, as we
have already said, the plaintiff's evidence tended to
show that, after the culvert was erected there was on
his land a marsh which, before the erection of the cul-
vert, was dry land, and this evidence, of course, chal-

lenged the proper construction of the culvert, and left that question for the determination of the jury.

5. It is contended by the defendant railroad company that the culvert was constructed for it by the Atlanta & Birmingham Construction Company, as an independent contractor, and that it is not liable to the plaintiff in this action. The evidence shows, without dispute, that the railroad company was in possession of the particular place where the culvert was put, and was using it for railroad purposes, as a common carrier of passengers and freight, when the culvert, over which its roadbed ran, and on which it operated its trains, was constructed, and that it was still using it for such purposes when this suit was brought. The defects in the construction, if there were any, were patent; and we are not inclined to think that the defendant can shirk its responsibility to the plaintiff, if he has been injured by reason of the culvert, by showing that it accepted, from an independent contractor, a piece of work which was so constructed as to create a nuisance upon the plaintiff's premises, and which construction the plaintiff, regardless of its defects, continued to use as a part of its roadbed after being apprised of its defects.—*Brent v. Baldwin,* 160 Ala. 635, 49 South. 343. "If one employs a contractor to do a work not in its nature a nuisance, but when completed it is so by reason of the manner in which the contractor has done it, and he accepts the work in that condition, he becomes at once responsible for the creation of the nuisance, upon a principle very similar to that which makes a principal responsible for unauthorized wrongs committed by his agent by ratifying them."—*Vogel v. New York,* 92 N. Y. 10, 44 Am. Rep. 349; *Choctaw, Oklahoma & Western Ry. Co. v. Louis H. Wilker,* 16 Okl.

384, 84 Pac. 1086, 3 L. R. A. (N. S.) 595, and authorities cited in notes.

We are therefore of the opinion that the trial court committed an error, for which this cause must be reversed, in giving to the jury the following written charge at the request of the defendant: "I charge you that if you believe from the evidence that all the Atlanta, Birmingham & Atlantic Railroad Company did, with regard to the construction of the culvert, or the diversion of the water, was to approve the work on the culvert, after it had been done by the Atlanta & Birmingham Construction Company, and accept it and pay for it, you will find your verdict in favor of the defendant Atlanta, Birmingham & Atlantic Railroad Company."

6. The evidence discloses that the Talladega Construction Company, one of the defendants, had nothing to do with the construction of the culvert; and, as the plaintiff's lands are alleged to have been damaged by reason of the improper construction of the culvert only, it is evident that for this reason, if for no other, the court committed no error in giving affirmative instructions to the jury in favor of said company at its written request.

For the error pointed out, the judgment of the court below is reversed, and the cause is remanded for further proceedings in the court below.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.