## Gesek v. Delaware, Lackawanna & Western R. R. Co.

*Negligence—Children—Duty of owner of land on which children are accustomed to play to maintain it in safe condition—Independent contractor—Contributory negligence of parents.*

1. The owner or person in control of land where children are accustomed to play, particularly if it is unfenced, must use ordinary judgment and keep it in safe condition, for they, being without discretion and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers or mere licensees.

2. This duty of reasonable care on the part of the owner in possession or control of the premises is absolute and cannot be delegated.

3. The defendant owned and operated a colliery and certain unfenced land immediately adjoining it, bounded on two sides by public highways. At a point about 140 feet from the line of each highway was an old barn; 180 feet from the barn was a powder-house for the storage of explosives, and the ground between the powder-house and the barn was open. On the public highways were a number of dwellings, and within a radius of 250 yards of the barn a number of families with children resided. Plaintiff occupied a dwelling-house on one of the aforesaid highways opposite the barn. For about two years before the accident complained of, the children of the neighborhood, from five to twelve or fourteen years of age, were accustomed to resort to this open ground for play and amusement, particularly in the vicinity of the barn. In September, 1919, a mine fire occurred, compelling defendant to cease operating its colliery. It entered into a contract with one H. to subdue the fire, and he furnished a force for the purpose. In this work he used large quantities of dynamite, which were purchased and furnished to him by defendant and stored in its powder-house aforesaid. The defendant paid him from time to time, in accordance with the difficulty of the work, and for the purpose of ascertaining the amount due, its engineer and general superintendent made inspections. Plaintiff, about eight years old, went to the barn to play. At this time his father was at work and his mother was confined to her bed by illness, and he had been told by the former to keep away from the barn. While playing about the barn, the children found four sticks of dynamite, which they thought were fire-crackers. It was in evidence that four pieces of dynamite were seen lying on the ground near the barn on the morning before the accident, at or near where it occurred, and that the men engaged in putting out the fire had carried the dynamite in open boxes from the powder-house across the grounds in the vicinity of the barn. One of the children lighted two or three of these pieces, and plaintiff held one in his hands. The stick exploded, as a result of which he lost both eyes and his left-hand. In an action to recover from the defendant for injuries received, the boy obtained a verdict of $30,000, and his father of $10,000. On a rule for new trial and motion for judgment *n. o. v.: Held:* 1. That the duty of keeping the premises safe for the children was non-delegable, and the fact that H. was an independent contractor was no defence. 2. That the defendant was guilty of negligence. 3. That the question of the child's parents' contributory negligence was for the jury. 4. That the motion for judgment *n. o. v.* should be dismissed, and the rule for new trial made absolute unless the child's father remitted all the verdict in his favor in excess of $5000.

Defendant's motion for judgment *non obstante veredicto* and motion for new trial. C. P. No. 4, Phila. Co., Sept. T., 1921, No. 6534.

*Robert M. Bernstein,* for plaintiff.

*Paul Freeman* and *J. H. Oliver,* for defendant.

McCULLEN, J., Sept. 24, 1923.—The defendant owns, and, when in use, it operates the Continental Colliery, in Taylor Borough, near the City of Scranton, in this State, and it owns and occupies the ground which immediately adjoins the colliery, and is bordered by Keyser Avenue and Mountain Road, both public highways.

Upon this ground, which was unfenced and wholly unenclosed, and at or near the intersection of the two public roads mentioned (at a point about

140 feet from the line of each road), there was an old barn, which at one time had been used for the sheltering of mules.

Upon another portion of the ground, about 180 feet from the barn, the defendant maintained a powder-house for the storage of explosives. The ground between the powder-house and barn was open.

On Mountain Road and on Keyser Avenue there are a number of dwelling-houses, and within a radius of 250 yards of the barn referred to there reside a large number of families with their children. The plaintiffs occupy one of the dwelling-houses on Mountain Road, almost opposite the mule barn.

For about two years prior to the accident complained of in this case, the children of the neighborhood, ranging in age from five years to twelve and fourteen years, had resorted to these open grounds of the defendant for play and amusement, resorting more particularly to the vicinity of the old mule barn.

A mine fire then prevailing, the defendant, about the middle of September, 1919, ceased coal mining at the colliery and devoted its attention to subduing the fire. It engaged one Michael Hoban as contractor in this work, and he furnished a number of men for the purpose.

In controlling and overcoming the fire, use was made of large quantities of dynamite, known as "50 per cent. dynamite," an explosive different from, and more dangerous in character than, the powder or explosive used in the ordinary coal mining operations.

This dynamite was purchased and furnished by the defendant to Hoban, for use by him and his employees; the same being stored in the defendant's powder-house above mentioned.

Under its arrangement with Hoban, the defendant paid him sums, which varied from time to time according to the difficulties which arose in connection with his work. Mr. Dimmick, the general superintendent of the defendant's mine properties, was in attendance each day at the colliery to witness the conditions arising in connection with the work and to agree with Hoban "upon prices to cover this particular new condition which had developed." Mr. Dimmick testified: "We had a mining engineer on the job every day, whose duty it was to measure all of the work performed by Mr. Hoban's men and also to note the condition under which the work was performed."

Hoban's bill for work done was rendered monthly or semi-monthly, and from it was deducted the amounts advanced on his account by defendant in making payment of the wages of his employees in accordance with his payroll.

Peter O'Harra, an employee of the defendant, testified: "I was the gang foreman in charge of the outside work at what was known as Continental Colliery; in charge of outside work, handling all supplies and all water-lines and water service. . . . My duty was traveling all over the territory and looking after all parts pertaining to the colliery. . . . I went through the barn two or three times every day. . . . It was on my route, traveling from one part of the work to the other, and I always kept an eye on it, looked around in case there was anything in the line of cigarettes lying around the barn or anything that would look as though it might cause a fire. . . . I made a visit to every building every morning." He testified that children were often seen playing around the mule barn. He was asked: "Q. Did you chase them away often? A. Very often. Every time I saw them. Q. How often did you see them? A. Pretty (nearly) every time you look around the grounds you would see them somewhere."

3 D. & C.

Gesek *v.* Delaware, Lackawanna & Western R. R. Co.

On June 23, 1921, the minor child, Chester Gesek, then aged about eight years and four months, living on Mountain Road (almost opposite), went over to the vicinity of the mule barn to play. At this time the child's father was away at work and the mother was confined to bed owing to recent childbirth. Whilst Chester was playing about the barn with three other children about his own age, they found upon the ground four sticks of dynamite, which they thought were firecrackers. One of the children lighted two or three of the pieces of dynamite. The Gesek lad held in his hand one of the pieces, which he thought was a "siz" or firecracker that "was not going to go off," and as he lowered his head to look at it, the stick exploded, causing him to lose both his eyes and his left-hand, which had to be amputated above the wrist.

This suit is brought by the minor and his father, Stanly Gesek, to recover damages for the injuries thus sustained, which they attribute to the negligence of the defendant.

The trial resulted in a verdict for the child, Chester Gesek, in the sum of $30,000, and in a verdict for the father, Stanly Gesek, in the sum of $10,000.

The defendant moves for judgment *non obstante veredicto,* and also for a new trial, the ground assigned for the latter motion being that the verdict as to the father, Stanly Gesek, is excessive.

There was testimony in this case warranting the jury in finding as it did, that the defendant's grounds and mule barn were used as a playground by the children of the neighborhood. This was one of the disputed questions of fact in the case. It was left to the jury to determine it, the trial judge instructing them that "the use must be such as to cause the place to be generally known in the immediate vicinity as a place of recreation for children, and to be generally and frequently and continuously resorted to as such a place by them."

We are to consider the defendant's motion for judgment *n. o. v.* as based upon these propositions advanced by the defendant:

1. There was no duty upon the part of the defendant to inspect the premises, and in the absence of proof that the defendant *created* the danger, there can be no recovery.

2. The dangerous condition was created by the employees of an independent contractor.

3. The defendant's negligence, if any, as to the dynamite upon the premises was not the proximate cause of the accident. There were two intervening causes, neither of which could have been anticipated: *(a)* The dynamite was, by some third party, removed from the barn and left lying on the ground. *(b)* There was attached to the dynamite-stick, by such third person, a fuse and cap, without which the explosion could not have taken place.

4. The parent, Stanly Gesek, was guilty of contributory negligence.

Assuming the correctness of the jury's finding that the premises were used as a children's playground, what was the duty of the defendant?

In 3 Sherman and Redfield on Negligence, at section 705, the rule is thus expressed: "The owner of land where children are *allowed or accustomed to play,* particularly if it is unfenced, must use ordinary judgment and *keep it in safe condition,* for they, being without judgment and likely to be drawn by childish curiosity into places of danger, are not to be classed with trespassers, idlers and mere licensees."

This is the law in our own State: Millum *v.* Lehigh & Wilkes-Barre Coal Co., 225 Pa. 214; Henderson *v.* Continental Refining Co., 219 Pa. 384; O'Leary *v.* Railroad Co., 248 Pa. 4; Gawronski *v.* McAdoo, 266 Pa. 449;

Fitzpatrick v. Penfield, 267 Pa. 564; Balser v. Young, 72 Pa. Superior Ct. 502; Costanza v. Coal Co., 276 Pa. 90.

This duty of reasonable care on the part of the owner in possession and control of the premises is an absolute and non-delegable duty: Fitzpatrick v. Penfield, 267 Pa. 564.

Thompson, in his work on Negligence, Vol. 1, § 665, says: "There are certain absolute duties resting upon natural persons and corporations, either by operation of law or by reason of having been voluntarily assumed. The law does not permit a person or corporation to cast off such a duty upon an independent contractor, so as to exonerate himself or itself for the consequence of its non-performance. *Of this nature is the duty which rests upon the owners of fixed property of guarding dangerous substances collected upon their property.*"

"When the owner of premises which are under his control employs an independent contractor to do work upon them which from its nature is likely to render the premises dangerous to persons who may come upon them by the invitation of the owner, the owner is not relieved by reason of the contract from the obligation of seeing that due care is used to protect such persons:" 26 Cyc., 1561.

"A person causing something to be done, the doing of which casts upon him a duty, cannot escape from the responsibility attaching on him of seeing that duty performed by delegating it to an independent contractor:" 26 Cyc., 1562.

Assuming that Hoban was an independent contractor, that the work he was engaged to perform was entirely lawful and that it was work which, when done with care, would not be likely to result in harm or injury to any one, it is, nevertheless, the fact that the defendant brought upon its premises large quantities of dynamite, a dangerous explosive, and brought there also Hoban and his men to handle this explosive. Both these agencies were brought to the premises by the owner, the defendant. This is not the case of an owner who has no reason to suspect the presence of a dangerous explosive upon his premises. The control of the premises remained with the defendant. There can be no doubt about this, since the fact is admitted by the pleadings and was indicated by the evidence at the trial.

Where the employer is exercising over the premises on which the stipulated work is being done a right of control which is co-ordinate and concurrent with that which is vested in the contractor, the employer's responsibility is determined by the principle that a person must not suffer a nuisance to continue on his premises to the injury of others, although he is not responsible for its creation: Vogel v. New York, 92 N. Y. 10 (19), 44 Am. Reps. 349.

Though the existence of the danger was created by the fault of an independent contractor, if the defendant, the employer, negligently failed to guard against the danger, he becomes responsible: Samuelson v. Cleveland Iron Mining Co., 49 Mich. 164; Curtis v. Kiley, 153 Mass. 123.

Stored in defendant's powder-house, the dynamite might be considered as lawfully and carefully kept upon the defendant's premises. If permitted, however, to lie about loosely in and about the mule barn, where children were wont to gather in play, it became a dangerous nuisance and a menace.

Did there exist such a nuisance and such a danger? If so, did the defendant know of it, or could it have known of its existence by the exercise of ordinary diligence?

It was testified to that dynamite was being frequently carried into and about the barn by the workmen engaged in the efforts to overcome the mine

3 D. & C.

Gesek *v.* Delaware, Lackawanna & Western R. R. Co.

fire, and it was in evidence that on the morning of the day preceding the date of the accident four pieces of dynamite were seen lying loosely upon the ground in the vicinity of the barn, and at or near the spot where the accident occurred; yet O'Harra, the defendant's employee, who seems to have performed the duties of watchman, visiting the barn and its locality two or three times each day, said that in going his rounds he did not perceive any such loose dynamite lying about.

Notwithstanding the employment of an independent contractor, it is a recognized principle that "the employer may be guilty of personal neglect, connecting itself with the negligence of the contractor in such manner as to render both liable" (2 Cooley on Torts, 1091-1092, citing Lawrence *v.* Shipman, 39 Conn. 586), and it is stated that the employer continues liable "where the injury was caused by the non-performance of an absolute duty owed by the employer to the complainant individually or to the class of persons to which he belongs" (1 Labatt's Master and Servant, § 41, page 127).

Even though the danger may have been created by the negligence of Hoban, the independent contractor, the negligence charged to the defendant is in its violation of a positive duty owing to the plaintiff by failing to provide against that danger after having had actual or constructive notice of its existence.

There is nothing in the evidence disclosing an independent intervening cause warranting the conclusion that the negligence of the defendant was not the proximate cause of the accident. There was no evidence that any third parties not in the employ of the defendant or of Hoban had taken the dynamite from the mule barn or had affixed thereto a fuse or detonating cap. The evidence was that four sticks of dynamite were seen lying on the ground near the mule barn on the morning of the day prior to the accident; that the men engaged in putting out the fire carried the dynamite in open boxes from the powder-house across the ground in this vicinity; that on the day of the accident the children found four sticks or pieces of dynamite at or near this point where dynamite had been seen lying the day before; that the dynamite had no fuse or cap affixed, and that one piece was lighted with a match, producing the explosion.

It is argued that, upon the testimony produced, the trial judge should have held as a matter of law that it was impossible for the accident to have occurred as described, two experts in explosives, witnesses for the defendant, having testified that to produce a dynamite explosion required force, a sudden striking or a blow or the firing of a detonating cap.

One of these witnesses admitted, on cross-examination, that a continued heat application might cause explosion.

It is known that the law reports contain cases indicating that explosions of dynamite have been caused by the application of fire or heat, and in Vol. 4 of the Encyclopedia Brittanica, at page 47, under the title "Blasting," we find this statement given in reference to dynamite: "The fact that a small quantity will often burn quietly has led to the dangerously *mistaken* notion that mere heat will not cause explosion."

In view of the child's testimony that the explosion followed the application of a lighted match, we think it was for the jury, and not for the court, to determine as to the truthfulness of the story and as to the probabilities of the case.

"One fixed with a duty to regard the safety of children is obliged reasonably to anticipate they will do the ordinary and natural things which may be looked for from them under the circumstances:" Gawronski *v.* McAdoo, 266 Pa. 449.

Whether the danger was created by the defendant, or created by an independent contractor whom the defendant had brought upon its premises to there handle the dynamite which the defendant had furnished, the negligence charged against the defendant was its failure to use reasonable care to provide against the danger which had been created and to avoid such accident as might reasonably be foreseen as likely to happen from its existence.

Between that negligence so alleged and the injury charged there is no evidence of any intervening cause to break the chain of causation and relieve the defendant of liability. The test is to be found in the probable injurious consequences which were to be anticipated as likely to result from the defendant's failure to provide against the danger which had been created by the dynamite lying loosely in and about the vicinity of the barn, the playground of the children.

The question of the father's contributory negligence was likewise one which the court could not determine as a matter of law.

The father had warned his child to keep away from the vicinity of the mule barn and the colliery. On the morning of the accident, however, he had gone to his work, and his wife was confined to bed, having recently given birth to a child. Under these circumstances, the minor plaintiff strayed to the point of the accident, the alleged playground in the immediate vicinity of his home.

The question of the parent's contributory negligence was for the jury: Henderson v. Continental Refining Co., 219 Pa. 384.

Upon a review of the evidence, we agree, however, with the defendant that the award to the father is excessive.

The defendant's motion for judgment non obstante veredicto is dismissed, and it is ordered that if within thirty days the plaintiff, Stanly Gesek (the father) file a remittitur of all the verdict in his favor in excess of $5000, the defendant's motion for a new trial will be refused; otherwise, a new trial will be granted.