Charles T. Major.
This is a claim to recover damages to claimant’s real and personal property alleged to have been caused by the State’s collecting and discharging rain and surface water upon his premises in the construction and maintenance of the drainage system of the Cherry Valley Turnpike, known as Route 20, and formerly known as Old Genesee Turnpike.
This claim accrued on July 17, 1951, was filed October 17, 1951, as a result of a very heavy, but not unprecedented rainstorm which caused considerable damage to claimant’s property.
Claimant acquired title to the damaged premises by deed on June 27, 1947. The premises described in such deed had excepted and reserved therefrom all land, premises, right of way or grant described in grants from one of claimant’s predecessors in title by warranty deed to the County of Onondaga, recorded in the Onondaga County Clerk’s office on January 22, 1931 in Book of Deeds No. 619 at pages 266 and 268, etc. No evidence was presented this court as to the specific contents of these grants. Claimant’s lands are now located-in the northeast quadrant of the intersection of the Cherry Valley Turnpike, Route 20, which runs easterly and westerly, and the new Marcellus-Marietta State Highway running northerly therefrom. At the time claimant purchased his premises, there were a residence, a barn, and one or more sheds located thereon. In the spring of 1951 claimant enlarged the barn by a 60-ft. by 25-ft. addition on its westerly side, resulting in a building 100-ft by 46-ft. when completed; placed some gravel fill between *929 the barn and old Marcellus-Marietta Road, and around his house, and removed several willow trees. This was the barn into which waters came on the night of the flood, through the most westerly door on the south side, and went through a portion thereof and out the back. After the building of the addition thereon, this barn was then partly within the line of the natural drainage, and in direct line with waters that might overflow from culvert number one (4 ft. by 4 ft.) on the Old Genesee Turnpike Road. This is the location of most all the damage and of the drainage area involved. The highway drainage was in a natural drain or ravine. The 4-ft. by 4-ft. culvert number one, was plugged with debris after the storm. There is no evidence as to its condition before the storm, or as to the source of the debris. No notice was given to the State as to any defect in this culvert. After leaving culvert number one, the course of the State’s drainage system then included a ditch along the easterly side of the old MarcellusMarietta Highway to a culvert number two in a swampy area or bog hole. This swampy area was seen by claimant before he purchased the premises, and continued to be present each spring and after each heavy rain. This condition prevailed for many years prior to the construction of the new Cherry Valley pavement in about 1932. In the spring of 1948, claimant gave notice to the State of this bog hole or swampy condition by telephoning the office of William Robinson, district engineer. This surface water drainage course had been in existence for over 15 years and the use for such purpose was adverse, peaceable, uninterrupted and under a claim of right; and, while color of title may not be present, it is unnecessary where the drain was and had been an apparent, open, visible and notorious incumbrance and actually occupied by the flow of water over such period. (93 C. J. S., Waters, p. 821, § 121.) The State had, therefore, acquired a prescriptive right to use and maintain such drainage system. This, likewise, included the drainage system from station 44+00 along the old water course to culvert number three on the old Marcellus-Marietta Highway. However, the flooding of the lands was too infrequent, and not regular enough, to include a prescriptive right to flood, except as to what is referred to as the swampy area or bog hole near culvert number two. No damage is shown to have been inflicted from culvert number three. There was no connection between culverts numbers two and three on the old Marcellus-Marietta Highway. These were separated by an increase in grade or a mound of earth. There was no change in the alignment of Route 20, or in its drainage system from *930 the 1932 construction to the date on which this claim accrued. These lands had been flooded, and dirt and debris left on the lawn on other prior occasions.
The locus in quo of this claim is in a hilly, rolling country. Claimant’s lands are situated near the bottom of a hill which ascends rapidly easterly for several hundred feet. The Cherry Valley Turnpike or Route 20 has traversed these hills for at least 62 years. The State took it over in the early thirties, and in about 1932 constructed a 20-foot wide concrete pavement with 6-foot shoulders, and ditches along each side. The grade of the hill varies from 7% to 10%. Before reconstructing this road and building the new Marcellus-Marietta Road in about 1932, Route 20 was a dirt road, and the intersection of these two roads was farther easterly and up the hill, and to the east of buildings on lands now owned by claimant. This portion of the old Marcellus-Marietta Road from Route 20 to station 23+00 was discontinued by the State and turned over to the Town of Marcellus for maintenance and repair on February 9, 1933. From that date on, the Town of Marcellus was responsible for that section of the road. Although the photographs convey the impression that the section abandoned by the State was no longer used, the evidence fails to show whether or not it was abandoned by the town and turned back to the abutting owner.
The construction of Route 20 in 1932 was according to approved and accepted standard engineering practice. The culverts under it and the drainage system connected therewith were so laid and installed as to follow and conform with the natural drainage ravines.
The claimant has failed in his burden of proof. There is no evidence on the part of an engineer or other person competent to testify, that the highways were improperly constructed or maintained, or that waters had been directed from their natural channels, or that the culverts and other parts of the drainage system were not of proper dimensions, design or alignment, or that the volume or velocity of water was increased, or that the outlet culverts numbers one, two or three were plugged up before the storm, or that the State had burdened the area of claimant’s premises where the damage was suffered with more water than existed before its construction, or as to the source of the dirt, stones and debris complained of. There is no proof as to the quantity of water coming from the highway or the amount coming down the hills naturally from other directions and over claimant’s lands, the capacity of culverts and ditches, amount of rainfall or rate of runoff.
*931 The claimant has failed to establish any negligence on the part of the State which was a proximate cause of claimant’s damage. The motion of the State made at the end of the trial is granted, and this claim No. 31002 is dismissed.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Judgment is directed accordingly.