Charles T. Major, J.
This claim is to recover damages to claimant’s real and personal property alleged to have been caused by reason of the collection, diversion and discharge of rain and surface water, which brought quantities of earth, gravel, sand, clay, stones, boulders and filth upon claimant’g. premises.
*427 Claimant’s premises are located near the bottom of a hill which ascends easterly on a 10% grade for several hundred feet, and near the intersection of Cherry Valley Turnpike, Route 20, running easterly and westerly, and the new MarcellusMarietta State Highway running northerly therefrom. The improvements on claimant’s property include a residence and large stable.
Pursuant to the Highway Law, the People of the State of New York, acting through the Superintendent of Public Works, entered into contract P.A.R.C. 52-68, dated September 16, 1952, with Dan-Bar Contracting Co., Inc., for the reconstruction, with Federal aid, of certain portions of Route 20, commonly known as Cherry Valley Turnpike, in the County of Onondaga, designated as Marietta-Marcellus S. H. 971;'Skaneateles-Lafayette, Pt. 2, S. H. 8360, and Skaneateles-Lafayette, Pt. 3, S. H. 8373,— a total length of 11.21 miles.
Dan-Bar Contracting Co., Inc., agreed to reconstruct and complete the aforesaid highways in the most substantial and workmanlike manner; and, among other things, to furnish all materials, appliances, tools, and labor required therefor. The contract included the following documents as part thereof, viz: advertisement for proposals; contractor’s proposal; the agreement; the public works specifications, the plans and specifications, any addenda to specifications issued prior to date of receipt of proposal, with the usual provisions and clauses for “ alterations and omissions ” deemed necessary for the public interest.
The reconstruction of the section involved in this claim began about September 15,1952, and was to be completed on or before July 1, 1953. It was not completed and accepted until the late Summer of 1954.
Prior to its reconstruction, Cherry Valley Turnpike, Route 20, was a two-lane concrete highway, 20 feet wide, with 6-foot shoulders and ditches along each side. The culverts under the highway and drainage system followed and conformed with the natural drainage ravines, old watercourses and earth depressions. In 1932, it had been reconstructed according to approved and accepted standards and engineering practice.- A claim against the State by claimant herein for damage due to flooding in July, 1951 was dismissed by decision of this court dated September 20, 1957, after a trial thereof. (Strickland v. State of New York, 7 Misc 2d 928.)
On May 3,1954, between 7:00 p.m. and 10:00 p.m. a very heavy but not unprecedented rain fell in the area. Water came off the *428 surrounding hills to the east of claimant’s premises, and a large amount of water carrying dirt, stones and debris came off the highway onto claimant’s premises, causing damage to his property.
The 1954 reconstruction contract plans specified the widening of the pavement two feet on each side, with some widening of and covering the shoulders with concrete; extending the length of the culverts; moving the shoulders and drainage ditches outwardly on each side; and cutting back the roadside embankment a compensating distance. Macadam was then laid over the concrete. The discharge of water came through the same culverts widened to conform, and the old watercourses that were in existence and used before the 1932 reconstruction. Catch basins were constructed and, in a few places, gutter pipes of sufficient size and proper material were to be laid and covered to take the place of some of the open-type gutters. No material increase in the volume of water is shown. A general statement by claimant’s engineer that the rate of flow might have been increased is not accepted by the court as the basis for an inference that the rate of flow in the ditches at the point of flooding had been materially increased by the plans. Claimant’s engineer had made no measurements, computations or observations of the rate of the run-off in either the former or the reconstructed ditches. The established grade remained unchanged as 10% from Station 20 easterly to Station 48+25, a distance of about 2,825 feet; and from Station 48+25 the grade east for about 775 feet reduces to 4.57%, then increases to 6.5% for a distance of 1,250 feet to the top of the grade at Station 68+50. The course and alignment of the highway, except for the widening, was unchanged. The entire reconstruction work was on State property. This reconstruction brought no greater run-off of water to the scene. Eemoval of sod and trees, clearing and grubbing, excavation, widening, filling and grading ditches may have increased the rapidity of the surface water on the occasion of the heavy rainfall, but this was a public improvement and the record is devoid of acceptable evidence of negligence either in design or construction; and, as stated in Constanzo v. State of New York (207 Misc. 242, 249) and cited cases “ Without such evidence where is the liability? ”
In order for claimant to recover herein, he must prove that the State was negligent and that such negilgence was the cause of the damage or contributed thereto. There may be negligence on the part of someone in connection with the reconstruction of this highway which caused or contributed to the cause *429 of claimant’s damage, but the question before this court is whether or not such liability, if any, is that of the State.
The burden of proof is upon the claimant.
The plans called for the installation of a 12-inch B.C. pipe from culvert at Station 44+00 easterly to a drop inlet at Station 47+70 on the southerly side of the highway, and covering same with gravel and dirt with a concrete cover; and a similar requirement for a 12-inch B.C. pipe from Station 40 on the southerly side, westerly to a drop inlet at Station 36+00, and continuing westerly to the culvert at Station 31+57. On the northerly side a similar installation was required with a 21-inch C.M. (corrugated metal pipe in the gutter from Station 44+00 easterly to Station 48+60; and a 15-inch B.C. pipe from Station 40+00 westerly to the old watercourse which crossed under the highway in a culvert at Station 31+57. All of these pipes had been installed and covered with loose gravel and other material, but the concrete covers had not been installed. From Station 40+00 to Station 44+00, an open concrete gutter was required, about four feet wide and six inches deep, just below the edge of the shoulder. This gutter had been constructed, but the concrete bottom was not installed.
The failure to cover these gutters with concrete created a condition leaving the loose gravel and other material easily susceptible to erosion. The open loose material was washed out and down the hill, and after filling the catch basins, cut into and under the highway foundation, took away the fill around the pipes, filled or partly filled the pipes, and obstructed the culverts, thereby diverting the water from its course onto claimant’s land and causing damage thereon. The failure to install the concrete over and along the gutters was the proximate cause of the highway waters entering upon claimant’s premises. Such failure was negligence on the part of the contractor.
Prior to the flood, and on more than one occasion, the State inspector had requested the contractor to put the concrete top on the gutters.
As a rule, in actions for damages caused by alleged negligence, either actual negligence must be shown, or facts and circumstances proved from which the inference of negligence can be fairly and reasonably drawn; and it is equally well settled that one person cannot be held liable for the damage caused by the negligence of another unless the relation of master and servant, or principal and agent, exists between the person sought to be held and the person whose negligent act is complained of. (Hay v. Cohoes Co., 2 N. Y. 159; St. Peter v. Denison, 58 N. Y. 416.)
*430 The State and the contractor were not in the relationship of ‘ master and servant” or principal and agent”. The contract was awarded after competitive bidding. The State had no right to interfere in the work. The contractor was to hire, discharge, pay its own help, and furnish its own equipment and tools. The control and direction of what to do was according to its own choosing*, and in such manner and at such time as it might decide. Its compensation was on a lump sum unit basis, it, therefore, follows that the Dan-Bar Contracting Co., Inc., was an independent contractor. The negligence did not result from the nature of the work itself, but resulted from the manner in which the work was performed.
It is rather elementary that an employer is not liable for the torts of an. independent contractor, or his servants, with some exceptions, such as: (a) independent negligence, which includes defective plans; (b) failure to employ competent contractor; (c) in cases where the Legislature otherwise provides ; (d) the ratification or adoption by the claimant as its own, or its concurring in, the particular act which causes the injury (Davidson v. Madison Corp., 257 N. Y. 120; Vogel v. Mayor, Alderman & Commonalty of City of N. Y., 92 N. Y. 10), and (e) where the work is inherently or intrinsically dangerous based on the legal theory that such is an absolute and undelegable duty. (Wright v. Tudor City Twelfth Unit, 276 N. Y. 303; Ann. 23 A. L. R 1084; Ann. 76 A. L. R. 1258.)
The claimant has failed to show any independent negligence on the part of the State. The plans had no defect which caused or contributed to this damage. There is no claim or proof that the contractor was not competent. The fact that the contractor may have been negligent in respect to the work in question affords no presumption that the State is negligent in having engaged it. (Ann. 30 A. L. R. 1544.) There is no law prohibiting the letting of this contract to an independent contractor or which determines this to be an undelegable duty. On the contrary, the Legislature provides and directs bidding by and letting to an independent contractor. (Highway Law, § 38.) The law which places the undelegable duty of maintaining the highway in a reasonably safe condition for the use of the traveling public is not involved here. This claim does not arise out of such circumstances. The State did not ratify, adopt or concur in the failure of the contractor to properly care for that portion of the ditch which eroded and caused the damage.
The work is not inherently or intrinsically dangerous and, therefore, can be delegated. The fact that such method is author *431 ized by the Legislature without exceptions, is indicative of this conclusion. The only exception is the reasonably safe maintenance of traffic.
Work is inherently or intrinsically dangerous if of a nature which will, in the ordinary course of events, occasion injury to others if certain precautions are omitted, but which may as a general rule, be executed with safety, if those precautions are adopted. (Ann. 23 A. L. R. 1085.) This project does not fall in such classification.
The fact that the Stale had a project engineer on this job does not alter the situation inasmuch as it had no control. The engineer was present in an advisory capacity in organizing the project, but the contractor was the sole authority as to what the contract progress would be and where it was done. The facts that the construction of the work had a tendency to alter the then existing highway, and that the State has an undelegable duty to maintain a highway reasonably safe for use by the traveling public, as well as checking on the contractor, are sufficient reasons to explain the presence of a supervisor, but these are not sufficient reasons to make the State liable. (Blake v. Ferris, 5 N. Y. 48, 51; Hexamer v. Webb, 101 N. Y. 377; Kelly v. Mayor, etc. of New York, 11 N. Y. 432.) Neither does it create a liability on the part of the State by the State’s retaining to itself the right to alter the plans or omit any.portion of the work. This reserved right gives to the State the authority to direct as to the results of the work, but without control over the contractor or his workmen as to the manner of performance, which control alone furnishes a ground for holding a master or principal liable for the act of the servant or agent. (Pack v. Mayor, etc., of New York, 8 N. Y. 222.)
It does not appear that the State permitted or suffered a nuisance to remain on its property for an unreasonable length of time, or was negligent in any mariner connected therewith as set forth in Osborn v. Union Ferry Co. (53 Barb. 629) and Vogel v. Mayor (92 N. Y. 10, supra).
The court finds that the State is free of any negligence which caused or contributed to claimant’s damage, and the claim is dismissed.
The foregoing constitutes the written and signed decision of this court upon which judgment may be entered. (Civ. Prac. Act, § 440.)
Let judgment be entered accordingly.