Alexander Del Gtorno, J.
This is an action by property owners suing the State of New York for the appropriation of part of their property, and as parties beneficiary of a contract for the construction of a portion of the Thruway in the Yonkers area of Westchester County. The claimants filed a claim for compensation for the appropriation of part of their property and for damages sustained as a result of the construction work performed in the area adjoining their property and for some dista-nce north and south, of it.
At the trial the claimants withdrew their appropriation claim on the ground that the same had been compromised and paid for by the State during the pendency of the action. The agreement of adjustment ivas dated February 10, 1956. The State claimed that this agreement was also a general release of all claims against the State, including damages caused by the construction operation. The court rejects such contention except as hereinafter qualified.
The agreement was a general release for all the property the State took directly as well as for all consequential damages to the value of the freehold. To stretch the meaning of clause *13 No. 1 of the agreement of adjustment: “ 1. The compensation to be paid * * * for the total value of the property * * * and for all legal damages caused by suen appropriation ”, would be an acceptance by the court of a “ tricky and evasive ” document submitted by the Bureau of Rights of Way and Claims. I hold that the State never intended to pull the wool over the claimants’ eyes nor does the language of the agreement imply other than an agreement by the State to pay the claimants for the property taken and consequential damages resulting from such taking.
We shall, therefore, determine on the merits of the evidence whether or not the claimants have made out a cause of action in damages against the State.
Prior to the appropriation, the claimants were and still are conducting the Boynton Veterinary Hospital at 299 Central Park Avenue, Yonkers, New York, which lies on the westerly side of Central Park Avenue, between Yonkers Avenue on the north and McLean Avenue on the south, these being two main east-west avenues, with Wendover Road lying between them. Wendover Road ran east to west beginning at the westerly side of Central Park Avenue.
The construction of the Thruway in this area was a major job of widening the existing Central Park Avenue and digging for utilities to be laid under the pavement. Without doubt this work must have caused not a few inconveniences to the adjoining owners, as well as to the traveling public.
In spite of where our sympathy may lie, it is settled law that when the State undertakes such elaborate improvements as the Thruway is, which are for the benefit of all its people, the inconvenience accruing to the adjoining owners must be considered subordinate to the general good. (Matter of New York City Housing Auth. v. Muller, 270 N. Y. 333, Ann. 105 A. L. R. 911.)
However, this judicial ruling is not absolute, for there may be occasions when such interference with one’s use of his property may be so gross and so long as to be a basis for consequential damages. ‘ ‘ Acts done in the proper exercise of governmental functions, or pursuant to valid legislative authority, although they may impair the use or diminish the value of private property, are not generally regarded as a ‘ taking ’ by eminent domain. Such injuries are generally damnum absque injuria for which no compensation is recoverable. But if there is an actual invasion of the owner’s private property so that its usefulness is materially impaired or partially destroyed, even though not actually taken, the courts will regard such an inva *14 sion. as a taking by eminent domain. But the invasion of the property must be a natural consequence of the proper execution of the public improvement and must constitute some physical interference with the property.” (Jahr, Eminent Domain, § 51, pp. 73-74; Matter of City of New York [E. 30th St. to E. 49th St.], 268 App. Div. 131; Matter of Gillespie, 285 N. Y. 771, affg. 259 App. Div. 1045.)
Inconvenience, generally, would be covered as part of the consequential damage and the afore-mentioned agreement for partial payment would be a sufficient release from such damages.
Claimants assert that Central Park Avenue was kept closed for so long that their clients had difficulty getting to their hospital. They claim that the confusion was such that they were compelled on three occasions, at almost $900 expense to them, to mail a chart to each of their 6,000 clients indicating by arrows how their place of business could be reached from the "avenues mentioned as well as the Cross County Parkway.
The charts do indicate roundabout ways of reaching the claimants’ hospital, but they also show that the hospital could be reached with some inconvenience. Even the business the claimants did in the years 1955 and 1956, when they complained the most, showed that they could be and were reached by their clients.
I do not doubt for one moment that some of the clients were lost to them because of this inconvenience in traveling. Did it amount to over $10,000 as they claim, or Avas the direct loss much less? No one can say and, in my opinion, no one proved. There could have been many reasons other than the Thruway construction Avhieh caused a loss of business during the period of construction. Whatever may have been the reason for the losses the claimants alleged they sustained, such proof was not substantiated by" the testimony. (Banner Milling Co. v. State of New York, 240 N. Y. 533, 539, Ann. 41 A. L. R. 1026 ; Matter of People v. Johnson & Co., 219 App. Div. 285, 290, affd. 245 N. Y. 627; Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583, 587.)
The comparative charts submitted by the claimants showing incomes from 1954 on did not present sufficient probative evidence upon which a judgment may be entered in favor of the claimants. Profits derived from a business are uncertain, highly speculative and depend on many contingencies aside from the use to which the land is being put. Neither the business nor its profits are acquired in eminent domain. (New York Cent. R. R. Co. v. Maloney, 234 N. Y. 208; Sparkill Realty Corp. v. State of New York, 268 N. Y. 192; Matter of City of *15 Rochester [Smith St. Bridge], supra; Matter of New York, Lackawanna & Western Ry. Co., 33 Hun 639; Matter of Gilroy, 26 App. Div. 314; United Fuel Gas Co. v. Railroad Comm., 278 U. S. 300.)
The claimants asserted and proved that the contractor dug a large trench in front of their place, which prevented entry into their place of business for three days before the contractor built a suitable bridge over the excavation. The claimants also alleged and proved that high piles of dirt were placed on their property by the contractor, who also parked heavy equipment and machinery on their property. They also claim that proper and sufficient detour signs were not erected which were also a basis of loss of their business.
These were wrongs which were perpetrated by the contractor for which the claimants may very likely recover damages against the contractor under the terms of the contract as well as for trespass.
The State cannot be charged with these damages. The State is all of us. It may operate only pursuant to the laws directing its course and through its representatives. The Legislature enacted the Highway Law by the provisions of which properly designated officials are given the prerogative to enter into contracts on behalf of the State for building highways, institutions, etc., for the benefit and use of the people. Through such contract was this section 9 of the Thruway built. The contract, entered into pursuant to statutory provisions, permitted the Superintendent of the Department of Public Works to engage consulting engineers as independent contractors who would supervise the work performed by the contractors. These engineers were on the job. The Department of Public Works had its own engineer to see that the contract was being performed. He had no authority to act except to report the progress of the work.
The direct agents of the alleged damages to the claimants were the contractors and, perhaps, even the consulting engineers.
To hold the State responsible would so saddle it with a concern for all little details on a job that it could well affect the program of highway development, for it would affect adversely the very reasons for which the State exists, namely, to provide for the welfare, peace and happiness of its people.
The claimants have stated that they have brought an action in the Supreme Court against the contractors. In doing this, they have been well advised.
The findings herein have been passed upon in conformity with this opinion. The claim is dismissed.