J. Seward Bodies, J.
These two claims, which were tried together at a Special Term held in Canton, New York, commencing April 1, 1963, are to recover from the State for the wrongful deaths of Michael Caldwell and Francis Cole, employees of the Ingalls Construction Company. Ingalls was the steel fabricator and erector on a subcontract on a general contract awarded by the State to the G-iibane Building Company. The portion of the contract involved here called for the erection of two bridges of the suspended cantilever type over the Racquette River on the St. Regis Indian Reservation, both over 700 feet in length.
The claims are based upon the alleged negligence of the State in supervising the erection of the bridges and especially in failing to foresee the inadequacy of a temporary splice in a flexible joint in the steel girders of the eastbound bridge. During the erection of the steel, Ingalls deemed it necessary to make this flexible joint rigid by welding angle iron braces and steel beams to the main girders. The two members of the bridge as thus joined were hoisted by a crane into place and remained in place, without any indication of any collapse, for a period of more than 24 hours. When the temporary joint failed, without any warning, the bridge collapsed and Cole and Caldwell were carried to their deaths.
The State had two engineers on location, to wit: one Martin Hodges, who was a licensed professional engineer, and his assistant, William Turner, a civil engineer. From their testimony it appears that their duties consisted of inspecting the work as it progressed to insure that the contractors complied with the specifications. They gave no direct orders to the contractors or their employees, nor did they attempt to exercise any control over the methods used.
The claimants contend that section 53 .of the Highway Law makes the State, through the Department of Public Works, responsible for the supervision and construction of all highways and bridges built by the State on any Indian reservation. By reason of this section and sections 200 and 241 of the Labor Law, which in effect require employers to provide reasonable and adequate protection to the lives, health and safety of all persons employed, the claimants allege that the State can be held liable for the deaths which occurred here.
*900 The question presented by these claims is whether or not the State of New York, as the owner of the land where the work was being done and the party which let the contract, can be charged with the duty of directing a subcontractor and inspecting its work to prevent negligence on the part of the subcontractor. In other words, does the State become an insurer of all practices employed in construction by the contractor or the subcontractor? It has been repeatedly held in our courts that even though the owner reserves the right to exercise that degree of supervision and control to assure himself that the contract specifications are being met, yet he will not be held liable for the negligent methods of the contractor or subcontractor. (Olsen v. Chase Manhattan Bank, 10 A D 2d 539, affd. 9 N Y 2d 829; Employers Mut. Life Ins. Co. of Wis. v. Di Cesare & Monaco Concrete Constr. Corp., 9 A D 2d 379.)
In Strickland v. State of New York (13 Misc 2d 425, 431) Judge Majob stated, concerning the State’s reserved right to inspect and supervise the contractor’s work and even to omit parts or change the plans, that: “ This reserved right gives the State the authority to direct as to the results of the work, but without control over the contractor or his workmen as to the manner of performance, which control alone furnishes a ground for holding a master or principal liable for the act of the servant or agent.”
The case at hand presents essentially the same facts. The State let the contract, but reserved the right to inspect and control. The inspection and control was only to make certain that the results produced conformed to the plans.
No claim has been made that the basic design of the bridge was negligent. In fact, the bridge exists now as it was designed. The negligence complained of was the evident insufficiency of the temporary splicing of the flexible joint. This was part of the process used to erect the bridge and was not to be included in the final bridge. It was just the contractor’s way of producing the final result called for by the State. The State did not design it, took no active part in erecting it and only in the vaguest sense approved it. Mr. Hodge, the State’s engineer in charge, when asked about the spliced joint, said that it looked like it would work.
Did the Legislature intend by section 53 of the Highway Law that the supervision and control called for in the section be so complete as to include the methods of construction employed by contractors, or was the Legislature making certain that somebody would be expressly charged with the responsibility of building, controlling and maintaining roads and bridges in *901 Indian reservations? The only reasonable answer is that the Legislature desired to give the Department of Public Works the sole authority to construct, supervise and maintain highways and bridges on Indian reservations. This duty cannot be fairly extended to the point where the State is required to so control and so supervise construction practices of independent contractors that it insures that all such practices are free from negligence. To hold this would be to destroy the independence of the independent contractor. If the Legislature had intended this, it would have required the State itself, through the Department of Public Works, to build the bridges and highways on Indian reservations, and this it has not done. It is submitted that it would be impracticable to do so. The claims accordingly must be dismissed.