John P. Gualtieri, P. J.
At the time of the appropriation on June 19, 1959, the claimant was the owner of a new modern shopping center in the Town of Gates, Monroe County, consisting of approximately 25 acres of land and improvements accommodating 28 retail stores, shops and offices. The taking consisted of 3.133 acres frontage used as a parking area. The taking reduced the parking facilities, although the court finds that there was remaining adequate parking to serve the needs of the center. By the appropriation documents it was prescribed by the State that the claimant would have 4 avenues of egress and ingress to and from the shopping center, with the proviso, however, that all of these accesses would be automatically forfeited by the claimant if it used its property for anything but “ retail store uses only”. Why this language was used by the condemnor is difficult to comprehend. There were in the shopping center at the time of the appropriation a bank, a laundry, a hairdressing establishment and a professional office, all of which cannot be considered in the category of a retail store accepting these words in their ordinary accepted meaning in the use of the English language. Nevertheless, the existence of this highly restrictive language as part of the taking had a drastic effect on the market value of the claimant’s property. True, no action was taken by the State to enforce this restriction on the enjoyment of the accesses provided the claimant. Nonetheless, the existence of this language and the ever-present possibility that the State or its agents at any time could or might invoke it was a threat which no prospective buyer could afford to ignore.
It is common knowledge that a modern shopping center complex must, to be attractive to the housewife and other patrons, provide all of the facilities including not only retail stores which sell merchandise but be able to provide the other services such as banking facilities, beauty parlors, shoe repairing and many others which good modern developers of these centers know are essential and necessary for a full and complete operation.
Because of the threat that these necessary services might or could be eliminated at any time, no prospective buyer could *863 be reasonably expected to consider buying this property. Its marketability was seriously impaired and its market value with these restrictions was markedly reduced.
The court finds that the fair market value of the claimant’s property prior to the appropriation was $2,500,000. The court finds that the fair market value of the claimant’s property after the appropriation was $1,000,000 and that the claimant would have been damaged except for the facts hereinafter recited in the sum of $1,500,000 of which $78,325 represented the value of the land appropriated in fee and the balance of $1,421,675 was consequential damages to the remainder by reason of the limitations on the shopping center contained in the appropriation documents.
The court was disturbed at the conclusion of the trial. It invited a conference of the parties and their attorneys and suggested to them that an effort be made to eliminate the seemingly unreasonable and unnecessary limitations on the accesses to the claimant’s property. The court was reluctant to be obliged to render what it felt would have to be a substantial judgment in the claimant’s favor and indicated to both parties that either by judicial construction or otherwise it would seek some method of relieving the State of an obligation to pay a large amount of money for what apparently was careless and negligent draftsmanship. There were numerous conferences in some of which the court participated. Finally on June 6, 1963, legal documents were filed eliminating the restriction on the claimant’s accesses and thereafter enabling the claimant to use and develop its property unencumbered by the restrictions mentioned above. Thereafter the parties were afforded an opportunity to submit additional evidence for the purpose of establishing whatever damages the claimant suffered during the four years that marketability of its property was impaired.
We now come to the question of damages. It was contended on behalf of the claimant that its damages by the taking were approximately $2,500,000 and that as a result of the settlement agreements its damages were reduced to approximately $1,000,-000. Included in this $1,000,000 of alleged damage are items for the market value of 3.133 acres appropriated in fee, consequential damages to the remainder, damages by reason of a temporary easement, $42,015 for damages claimed to have been done to the claimant’s parking area during construction, approximately $1,000 flood damage during the course of construction and $19,601.80 the cost to the claimant of a temporary road which it built to accommodate its customers to and from the shopping area during construction.
*864 The claim for the $42,015 representing damages to the parking area and the $1,000 flood damage are disallowed. The evidence discloses that whatever damage was done to the parking area was done by the contractor and there is nothing before the court upon which liability for this damage can attach to the State for acts of its independent contractor. (Morris v. State of New York, 10 A D 2d 754; Uppington v. City of New York, 165 N. Y. 222; Konner v. State of New York, 227 N. Y. 478; Strickland v. State of New York, 13 Misc 2d 425, opp. dismd. 10 A D 2d 797.)
The claim for $19,601.80, the cost of the temporary access road constructed by the claimant for use by its customers must be similarly disallowed. Access to the shopping center during the course of construction was always available. For the fact that the accessibility to the center was inconvenient and difficult and that the claimant found it suitable to improve the facilities by construction of a temporary road, the claimant cannot recover any damages. (Holmes v. State of New York, 279 App. Div. 489, 282 App. Div. 278; Queensboro Farm Prods, v. State of New York, 5 AD 2d 967, affd. 5 N Y 2d 977.)
Included in the claim for consequential damages the claimant’s experts based their opinions of damage in part upon the fact that accesses to the claimant’s property were limited whereas before the taking the claimant had available unlimited access to its property from three streets surrounding the property. It is well established that limitation of access, provided the property is reasonably accessible is not a basis for compensable damage and no consideration to this portion of the claimant’s damage can be given. (Holmes v. State of New York, supra; Nettleton Co. v. State of New York, 11 A D 2d 899; Selig v. State of New York, 10 N Y 2d 34; National Biscuit Co. v. State of New York, 12 A D 2d 998, vacated 14 A D 2d 729, affd. 11 N Y 2d 743.)
As stated above the claimant is entitled to an award in the sum of $78,325 for the 3.133 acres taken in fee.
The damages sustained by reason of the temporary easement are hereby fixed in the sum of $750. This item was not much disputed upon the trial.
We now come to the difficult question of finding a reasonable basis for compensating the claimant for the damages it sustained during the four-year period that its title and the marketability of its property were impaired by reason of the limitations placed upon accesses to the shopping center. The claimant endeavored to establish such damage through experts who based their opinions of damage by projecting estimated rental *865 income and expenses and by calculating lost income by reason of the limitations placed upon the property by the language of the taking instruments.
The court has concluded that such opinions are based upon too much speculation and conjecture; that there are too many other factors which enter into a consideration of the amount of rental income to be anticipated with or without the restrictive clauses, to afford any sound basis upon which to reach a proper measure of damages.
The claimant did establish that it had negotiated a lease with the United States Government for the leasing to it of a building to be constructed and used as a branch post office. This transaction was blocked because the attorneys for the financial lending institution properly refused to certify the title on the ground that a post office was not and could not be designated a retail store. There were negotiations with the Prudential Insurance Company for use of space by it. It was shown that Prudential obtained another location in the vicinity. A large department store, usually considered a favorable adjunct of a shopping center, could not be induced to come in because it was feared that the right of access could be at any time arbitrarily cut off because of the restrictions and thus make the center less attractive to it.
In these and other ways it is undoubtedly true that the normal and orderly development of this center especially in the first important years of its operation was impeded. Prospective tenants justifiably could feel reluctant to start a business there and the evidence above recited of specific instances of this attitude confirms this fact.
However, the court cannot measure damages by loss sustained by the delays in the post-office transaction, or the loss of Prudential or any other individual tenant, because such specific damages would not be susceptible of reasonably accurate proof upon which to base an award.
Nevertheless, the court finds that during this four-year period the marketability of claimant’s property because of these restrictions on access was seriously affected and impaired. It was prevented during these years from developing and expanding its operation. The specific instances recited above, although in themselves insufficient upon which to predicate damages, are evidence of the fact that the claimant was substantially damaged and some method of compensating the claimant for such damages must be found, difficult as the task may be.
*866 A sovereign’s right of eminent domain is a drastic remedy permitting as it dees the talcing of private property without the owner’s consent. When the State or any other Condemnor exercises this prerogative it has a duty to guard against the use of careless language which can throw a cloud around the owner’s title.
In the case at bar the use of the words “ retail stores ” was careless and imposed an unnecessary limitation upon the use and enjoyment of claimant’s property. The fact that the limitations were removed after conferences with the court is evidence of the fact that they were unnecessary and that the State’s highway needs and traffic patterns could be satisfied without them.
Nevertheless, until the restrictive language of the original taking was eliminated by agreement the claimant was harassed and hindered in the use and development of its property. A prospective buyer or lessee would not negotiate with the owner on the speculation that the court might at some future time eliminate the eland. The fact that the Prudential Insurance Company, the United States Government and a large department store refused to negotiate with the claimant is indicative of the impairment of the marketability of the claimant’s property.
The principle laid down by the Court of Appeals in Jafco Realty Corp. v. State of New York (18 A D 2d 74, opp. dsmd. 18 N Y 2d 722), in Our opinion has no application here. In that cáse it was held that the broad language of the easement taken by the Thruway Authority was to be construed as limited to the extent that the condemnor was actually using or exercising its rights under the easement and that any extension or expanded use of the claimant’s property by the taking authority would be a new de facto taking for which the claimant could obtain additional compensation. Here we have no problem of construction of the language of the taking. It was an accomplished fact from the moment that the State1 filed its taking documents. By the clear,- unequivocal language used, the State could at any moment close the accesses because there were other than retail stores in the shopping center and could, of course, close the accesses if the claimant had been able to complete its negotiations with the United States Government, the Prudential Insurance Company or any other prospective nonretail establishment.
No prospective buyer or tenant in the face of this over-hanging sword could be expected to run the risk that the State might not at any moment invoke its clear and unequivocal right and *867 power to insist that anything but retail store uses was a forfeiture of the right of access.
It was established that a shopping center of this kind had a normal life of approximately 35 years. During 4 of those years, probably the most critical because the shopping center bad just been opened, claimant was deprived of the opportunity because of the impairment of the marketability of its property to develop its business in a normal and unimpeded manner as it would have had a legal right to do.
The court has stated above that the consequential damages to which the claimant would have been entitled had the restrictions not been removed were $1,421,675, based upon a 35-year life span for the center. The claimant suffered consequential damages during 4 of those years, approximately 11% of the center’s life span, and for this proportionate loss the claimant is entitled to an award in the sum of $156,384,25 which represents 11%,
The court has been able to find no precedent for the manner in which the amount of damages have been determined here, However, if the claimant has been damaged and the court has so found, and if the claimant is entitled to just compensation for the damage and the law prescribes that it is, the conclusions reached would appear to he fair and just to all parties.
The claimant’s property was appropriated by the State of New York on June 19, 1959, pursuant to section 30 of the Highway Law for purposes connected with the State Highway System entitled “ Project SH 254, Chili Boad, Part I” by the filing of an appropriation map and description in the office of the Clerk of the County of Monroe on such date. The claim herein was duly filed with the Clerk of the Court of Claims on April 9, 1960 and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court has viewed the premises.
The claimant is entitled to an award against the State of New York in the amount of (a) $78,325 for the 3.133 acres taken in fee; (b) $750 for damages for the temporary easement; and (c) $156,384,25 for damages for the impairment of its title and the marketability of its property during the four-year period, making a total of $235,459.25, with interest thereon from June 19, 1959 to December 19, 1959 and from April 9, 1960 to the date of entry of judgment herein.
The award to the claimant herein is exclusive of the claims, if any, of persons other than owners of the appropriated property, their tenants, mortgages and lienors having any right *868 or interest in any stream, lake, drainage and irrigation ditch or channel, street, road, highway, or public or private right of way or the bed thereof within the limits of the appropriated property or contiguous thereto; and is exclusive also of claims, if any, for the value of or damage to easements and appurtenant facilities for the construction, operation and maintenance of publicly owned or public service electric, telephone, telegraph, pipe, water, sewer and railroad lines.