Robert J. Mangum, J.
This claim seeks recovery for property damages allegedly occurring as a result of the construction of the Flushing-Maspeth Grade Crossing Elimination Project (P. S. O. No. 11626). A notice of intention was filed on March 8, 1968 and the claim, on March 6, 1970. Trial was commenced April 22, 1974.
In a [decision dated June 6, 1973, in which interest was suspended on any award from April 30, 1973 to the first day of *440 trial, the Hon. Henry W. Lengyer¡denied the State’s application for dismissal and held the claim timely filed.
The damages consist basically of three separate items, each distinguishable by its own factual and legal considerations. According to counsel’s brief, claimant’s damages may be summarized as f ollows:
“ (a) $226,000 plus interest from November 15, 1969 for out-of-pocket losses incurred when, during the extended period of construction, total access- ¡was cut off to the Welbilt plant from all doors, entraneeways, and driveways that fronted on Flushing Avenue.
“ (b) $36,478 plus interest from February 13, 1968, for damages sustained when the 48-inch Queens Conduit of the -Catskill Aqueduct which ran alongside the Welbilt premises, was ruptured. The icontractor, driving piles in accordance ivith the plans of the State, drove a steel H-Pile right through the center of the water conduit.
“ (c) $52,626.43 plus interest from July 7,1970, for structural damage to the Flushing Avenue and 59th Drive elevations of the Welbilt buildings, caused by the enormous and extended pile driving and sheet piling .activities adjacent to and in the immediate vicinity of the Webilt plant.”
The .claim is predicated in part -upon the authority of section 6 of chapter 678 of the Laws of 1928 (Grade Crossing Elimination Act; now Transportation Law, §§ 220-229) whose relevant provisions contain the following: ” If the work of such elimination causes damage to property not acquired as above provided, the state shall be liable therefor in the first instance, but this provision shall not be deemed to create any liability not already existing in law. ’ ’
FACTS
.Claimant manufactures home and commercial appliances. The site of its operations comprises an enormous area consisting of several attached and semiattached buildings that contain about 670,000 -square feet of industrial space.
The plant is located on Flushing Avenue, which runs north and .south along the property’s westerly boundary, in the Maspeth section of Queens ¡County. The northern portion of the property has frontage along '59th Drive, 59th Street, .and 59th Place. Abutting the property’s southern exposure is a driveway that -extends from Flushing Avenue through most of that section of ihe property and is perpendicular to Nurge Avenue.
Bifurcating the plant at points along the Flushing Avenue side and meeting at the easterly extreme of the property are *441 two .branches of the Long Island Railroad. The Bushwick Branch tracks traverse the southerly area, parallel to the driveway and run under portions of the plant. Entering at the confluence of Flushing Avenue and 59th Drive is the Montauk Division.
I. DAMAGES FROM LOSS OF ACCESS
The purpose of the construction project was to eliminate the Flushing Avenue railroad crossings. Prior to the commencement of the work, Flushing Avenue provided the chief means of access to the plant.
The factory was designed to receive, conduct, process and otherwise handle in an orderly and efficient assembly line manner an entire manufacturing operation, from receipt of raw materials to packaging and shipping of finished products.*
On or near Flushing Avenue, the claimant maintained several overhang doors as well as the entrance to its driveway. The doors (“ E ”, “ C ”, “ A ”, and “ K ”, as depicted on claimant’s Exhibit No. 11) were assigned specific functions relating to the over-all operations of the plant. 'Suffice it to say, through these areas, 600,000 pounds of steel sheeting and coils were received each week, tons of scrap metal removed and numerous other raw materials, supplies and finished products processed. The entrance to the driveway provided an easy and straight means for reaching various other areas including door “ H ”.
During the course of most of the construction, Flushing Avenue became so torn up, constricted in size, congested with machinery and otherwise obstructed, that claimant was obliged to use alternative areas for receiving and shipping. Doors “E”, “C”,“A”, and “ K ” and the driveway entrance were virtually, though not entirely, rendered inoperable during most of the period from 'September, 1967 through November, 1969.
Access to claimant’s property was had over a temporary road constructed by the State that .crossed the Bushwick Branch tracks and connected with Nurge Avenue. The substituted access created maneuverability problems for big trucks and congestion because fewer doors were available from which to process material entering and leaving the plant. Disruption of the internal operations also occurred .which required the hiring of additional employees.
*442 Though the manner in which deliveries were made and the additional expenses incurred transporting material within the plant lessened the economic efficiency of claimant’s operations, there was not substituted therefor a wholly inadequate or unprofitable system.
Prior to construction and on December 14, 1966, the State appropriated a small piece of claimant’s property aggregating 11,860 square feet. Thereafter on or about July 21, 1967, the matter was settled between the parties for $44,700. In this case claimant is not contending that as a result of that appropriation he suffered a diminution in property value due to consequential damages. i
As part of the settlement of the appropriation matter, claimant signed an agreement of adjustment and release. The court finds that these documents are limited to damages arising out of or as a result of the appropriation, and do not purport to be a release of the type of damages claimed herein. The State’s proposed Exhibits “ W ”, “X”, and “Y” being irrelevant, the court sustains claimant’s objection to their introduction into evidence.
Claimant’s claim is based on a temporary'loss of or interference with access arising from the nature of the construction along Flushing Avenue. The gravamen of the claim is whether the additional costs and inconveniences borne by claimant in its manufacturing operations. are compensable.
While an abutting owner may not be deprived without compensation from all access to a highway (Egerer v. New York Cent. & Hudson Riv. R. R. Co., 130 N. Y. 108, 112), what may be suitable means of access is a question of fact (Cousin v. State of New York, 42 A D 2d 1016) and mere inconvenience does not stamp such access as unsuitable (Tucci v. State of New York, 28 A D 2d 774; Holmes v. State of New York, 279 App. Div. 489). iSuitability of access is related to the inherent needs of a property’s highest and best use. (Priestly v. State of New York, 23 N Y 2d 152; Cousin v. State of New York, supra.) Where there is not only a diversion of traffic but an elimination of normal access so as to render the property entirely unsuitable for its former highest and best use, consequential damages may be the subject of an award. (LaBriola v. State of New York, 43 A D 2d 295.)
The facts disclosed in this trial indicate additional expense and inconvenience, but dp not establish a change in highest and best use. The use of additional forklifts and manpower is not a drastic change in procedure (Castellano v. State of New *443 York, 38 A D 2d 652); there is no demonstrable proof of permanent damage to claimant’s business (Sukiennik v. State of New York, 26 A D 2d 769); the partial and temporary closing of the driveway and doors established inconvenience but not unsuitability. (Penningroth v. State of New York, 35 A D 2d 1024.)
Moreover, the damages .claimed in this case clearly arise from the construction of the grade crossing elimination project and not from the relatively small parcel of land acquired by the State. In this regard relevant case law denominates such damages as damnum absque injuria.
Where no land is appropriated, or where a taking occurs but it is the construction of the project which causes the complained of conditions, recovery will only be allowed where access is destroyed permanently rather than temporarily. (Coffey v. State of New York, 291 N. Y. 494; Van Aken v. State of New York, 261 N. Y. 360; Beck v. State of New York, 21 A D 2d 939; Gulf Oil Corp. v. State of New York, 52 Misc 2d 451; Boynton v. State of New York, 28 Misc 2d 12.)
Though ‘ ‘ it may well be that claimants suffered disproportionately because of their location or the nature of their businesses, the law is clear that without permanent loss of access there is no appropriation, de facto, or otherwise.” (Beck v. State of New York, supra, p. 940.) The doctrine may appear to be at variance with natural justice, but it rests upon sound legal reasoning. (Transportation Co. v. Chicago, 99 U. S. 635, 641.)
‘ ‘ The inconvenience and damage which a property owner suffers from temporary obstructions are incident to city life .and must be endured. The law gives him no relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made. However, if the temporary obstruction is a result of unreasonable, unnecessary, arbitrary or capricious acts or conduct by the one in charge of the improvement or construction, the abutting landowner has a right -of action for damages resulting from such interference with access to his property.” (2 A Nichols, Eminent Domain [3d ed.], § 6.4442[2], pp. 6-252-6-253.) The latter considerations were not pleaded or proven at this trial.
II. DAMAGE DUE TO DISRUPTION OF WATER SERVICE
On February 13, 1968, a water main break at the construction site occasioned the cessation of most .of the Welbilt maufacturing operation. The cause for the break was the driving of a steel “ H ” pile beam into a 48-inch conduit which ran across Flushing *444 Avenue. Loss of water and water pressure disrupted the functioning of machinery. There was no invasion of claimant’s property or other physical damage from cascading water, though there was substantial flooding in the immediate area of the factory.
A party who engages an independent contractor to do work is not ordinarily liable for the latter’s negligence in performance (Berg v. Parsons, 156 N. Y. 109, 112-113; Chili Plaza v. State of New York, 42 Misc 2d 861) unless some exception, such as independent negligence; employing an incompetent contractor; legislative prohibitions; ratification or adoption of the injury producing act; inherently or intrinsically dangerous work (Strickland v. State of New York, 13 Misc 2d 126, 430, app. dsmd. 10 A D 2d 797) is operable.
The only .considerations relevant herein are dangerous work and independent negligence.
Several years ago, the Court of Appeals in Spano v. Perini Corp. (25 N Y 2d 11) reversed an earlier ruling and held that a party who has sustained property damage caused by blasting on nearlby property can maintain an action for damages without showing negligence. This pronouncement reversed Booth v. Rome, Watertown & Ogdensburg Term. R. R. Co. (140 N. Y. 267) which required proof of negligence unless the damage was occasioned ,by flying material or other actual invasion.
Although the Perini case concerned blasting, the claimant relies on its authority for the proposition that pile driving is inherently dangerous and liability should be predicated on a “ without fault ” basis. Insofar as pile driving operations set in motion certain vibrations and concussions similar to blasting, which are potentially destructive to innocent property owners if precautions are .omitted, such engineering practices may be classified as instrinsicaily dangerous.
On the other hand, there is authority in this State for a contrary holding. (See Horn v. State of New York, 31 A D 2d 364, 367, for the limited findings that pile driving procedures are not inherently dangerous.)
This second cause of action does not assert, however, that the damages are the result of the latent dangers attendant with pile driving. The damages flowing from the punctured 48-inch water conduit are the result of defective design plans. .Since the complained of injuries were not the result of the nature of the work but the manner in which the work was performed, the negligence of the ¡State must be shown. (28 N. Y. Jur., Independent Contractors, §§ '24 and j25.)
*445 It is not necessary, therefore, to find that pile driving is inherently dangerous or ‘‘ involves a substantial risk of harm no matter the degree of care exercised ”. (Spano v. Perini Corp., 25 N Y 2d 11, 18, supra.) This pronouncement will have to await a determination by a court of appellate authority when the question is factually and properly presented.
As previously noted, an employer may be liable for the torts of its contractor where there is evidence of independent negligence. Such negligence may be predicated upon defective design plans. (Uppington v. City of New York, 165 N. Y. 222; Morris v. State of New York, 10 A D 2d 754; Caldwell v. State of New York, 39 Misc 2d 898; Strickland v. State of New York, 13 Misc 2d 425, supra.)
The court finds that the plans were defectively and negligently prepared, and without regard to sound engineering practice.
Through the use of overlay scale drawings, the problem was graphically demonstrated. The contract plans placed the water main several feet from the placement of the pile when, in fact, the pipe lay directly under ¡the spot ¡where the beam was to be driven.
According to claimant’s expert testimony and exhibits, the 48-inch water main was laid out with reference to certain New York City surveyed and permanently placed monuments. The project plans were prepared .with reference to these same monuments. Furthermore, the exact location of the water main cduld have been ascertained from original plans which were publicly filed documents. Ascertainment of the pipe line for -purposes of setting out the location where piles could safely be driven involved nothing more than due care and reasonable engineering draftsmanship.
The court does not reach the conclusion that the contractor was also a wrongdoer or that any of its acts contributed to the damages suffered. The liability ¡of the State is predicated upon the theory ¡of its own wrongful acts, whose foreseeable consequences were not altered by some hypothecated intervening cause. The provisions .of the contract and proposal relating to the contractor’s obligation to accurately locate and inspect do not relieve the State of its own wrongdoing as against an innocent third party. These provisions possibly may have bearing on an issue .of indemnification between joint tort-feasors, but the same will have to ibe decided in the appropriate forum lest we deprive the contractor of his right to a jury trial. (Bartlett v. State of New York, 40 A D 2d 267.)
*446 in. CRACKS CAUSED BY PIDE DRIVING OPERATION
Whether .pile driving is inherently dangerous and should be placed in the same category as blasting; whether pile driving should be compensable, irrespective of negligence, are questions that must await the presentation of a proper factual situation. The proof must, in the first instance, establish a causative relationship between the structural damages claimed and the effect of the pile driving.
In this regard the evidence adduced at trial fails short of determining the threshold question. There was conflicting testimony concerning which cracks to the Flushing Avenue facade existed prior to commencement of the pile driving operation and which ¡were a result thereof.
The most convincing proof preponderated in the ¡State’s favor. This was aseries of ¡photographs marked State’s Exhibits “P” and ‘ ‘ Q These photographs, unlike claimant’s pictorial proof, depicted the disputed structural areas as of April, 1967, approximately three months before the pile driving began. A comparison of these photographs with claimant’s Exhibit 'No. 64 clearly and convincingly indicated that substantial damage of the nature complained was in existence prior to the commencement of the pile driving ¡operation. Claimant’s proof was uncertain in identity ¡and suspect. There being a paucity of proof, it cannot be ascertained with any degree of certainty what damage, if any, is attributable to the pile driving operation.
In weighing the quality and. quantum of expert opinion proffered by both parties, the court is additionally persuaded the cause ,of the flaws in the facade of the buildings was a direct consequerice ¡of cumulative conditions such as aging, weathering, settling and kind of construction of buildings, use of heavy maufacturing equipment, and considerable truck and railroad traffic.
DAMAGES
Welbilt was a large, fully equipped, staffed and profitable business at the time of the water main break. “ The State was a wrongdoer, ¡and, therefore, full compensation for the direct and directly consequential damages ” arising from the loss of water .should be awarded. (Lakeside Paper Co. v. State of New York, 45 App. Div. 112, 113; National Cellulose Corp. v. State of New York, 292 N. Y. 438; Weeks v. State of New York, 48 App. Div. 357.)
Asa result of the water main break, claimant could not operate a major portion of its factory. The plant normally manufactures *447 24 hours a day, five days a week. The manufacturing aspects were closed for one full day. This shutdown affected numerous departments that depended on water for the running and maintenance of machinery and accounted for 89% of claimant’s work force.
Included in claimant’s estimation of damages is an additional 2.4% of the daily payroll for office personnel that were sent home three hours early because of lack of toilet facilities and an estimated one hour loss of clerical work due to panic and confusion at the time of the occurrence. These damages are disallowed as speculative and not a necessary consequence of the injury.
Further, a union agreement permitted claimant to send employees home who could not perform their jobs due to some occurrence beyond the control of claimant. In the event this condition arose, claimant would be responsible for a minimum of four hours of wages. Claimant not having availed himself of this provision in mitigation of its damages, at least during the two evening shifts, cannot now seek reimbursement from the State. The court has reduced claimant’s alleged wage costs by an additional 13% which represents four hours from each of the two evening shifts.
Computed from the total weekly payroll figures together with a 30% fringe benefit factor, the expenses for 76% of employees affected amounts to $20,717.60. Lost profits for the day were reasonably estimated at $1,259.59.
Claimant .also submitted a list of unabsorbed overhead expenses that was based on a two-month cost account broken down into a typical day. Some of these cost items could not possibly have been incurred while certain machinery was inoperable. While the boiler was shut down, fuel was not consumed. While water was not available to the factory on February 13, 1968, there could not have been a metered water cost on that day. Other items are not satisfactorily justified on a proportionate basis with the departments affected or are otherwise found remote and unrelated to the complained of occurrence.
The motions to dismiss made by the State at the close of the entire case and upon which the court reserved decision are granted to the extent of dismissing the first and third causes of action for damages resulting from loss of access and pile driving operations, and denied regarding the second cause of action, defective design plans. Accordingly, claimant is awarded $21,977.19 for all damages, together with appropriate interest thereon.

 (Although it is not necessary that this aspect of the case be discussed at length, at trial, through overlay exhibits, photographs [aerial and ground], motion pictures, diagrams, and clarity of witnesses’ testimony, a graphic picture was portrayed for which claimant’s counsel should be commended.)